**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Leo L. MIROFF, Annette Miroff, Husband and Wife and The Central Standard Life Insurance Company, Defendants-Appellees.**

**Nos. 15110–15111.**

United States Court of Appeals
Seventh Circuit.
Nov. 23, 1965.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division, Joseph Kovner, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Thomas J. Curoe, Asst. U. S. Atty., of counsel, for appellant.

Daniel M. Pierce, Hyman A. Pierce, Chicago, Ill., for Central Standard Life Insurance Co., defendant-appellee.

Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is an appeal by the Government from summary judgment for defendant-insurer, The Central Standard Life Insurance Company, in the Government's suit for a judgment for unpaid income taxes and to enforce a tax lien [1] against the cash value of the taxpayer-Miroff's life insurance policy.

Since the facts are not disputed, the issue for us is one of law: whether an income tax lien may be enforced against an insurer, who had, without actual notice of the previously recorded lien, made a "policy loan" to its assured, the delinquent taxpayer, of the full cash value of the unmatured policy. We think the district court did not err in deciding the issue against the Government.

Miroff and his wife were delinquent in payment of 1954 and 1957 income taxes. On September 30, 1955, the Commissioner made an assessment of $3,767.02 against them for the year 1954, demand for payment availed nothing, and on April 2, 1957, notice of lien [2] was filed with the Recorder of Deeds of Cook County, Illinois. Nothing had been paid on the assessment when on June 2, 1961, Leo Miroff applied for and received a "policy loan" of $1,770.00 against the approximately $1,800.00 cash value of his policy with Central. On September 15, 1961, interest upon the loan added by insurer increased the loan amount to $1,806.00, so that thereafter it equalled the cash value.

Central had not received actual notice of the tax lien when the loan was made. It received notice of levy [3] under the lien on September 19, 1961, and ten days later this suit was filed against Central and the Miroffs. The Government prayed that Central be required to pay to it the amount of the cash surrender value of Miroff's policy, "unreduced" by the amount of the policy loan.[4] Central and the Government both moved for summary judgment and the court, upon an "expressed determination that there [was] no just reason for delay," Fed.R. Civ.P. 54, entered judgment "only" for Central. In its opinion the district court relied upon United States v. Sullivan, 333 F.2d 100 (3rd Cir. 1964), and Parish of Orleans v. New York Life Ins. Co., 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597 (1910), and held that the "policy loan" was made by Central as debtor, not a creditor, of Miroff, who had "no actual obligation" to return the advance of the cash value of the policy.

It is not disputed that when Miroff elected to receive the "loan" the cash value was an asset of taxpayer. United States v. Hoper, 242 F.2d 468, 470 (7th Cir. 1957); cf. United States v. Sullivan, 333 F.2d 100, 110 (3rd Cir. 1964). In Sullivan, the court first decided that the tax lien could not attach to the cash value of taxpayer's unmatured policy until an election was made to cancel the policy and receive the cash value. The court then discussed the theory of the Government there, same as its theory here, that the "policy loan" transaction rendered Mrs. Sullivan the debtor and the insurer the creditor for the amount of the loans, with Mrs. Sullivan's policy interest serving as security for the "debt." The court in Sullivan decided

---

1. INT.REV.CODE of 1954, § 6321.

2. INT.REV.CODE of 1954, § 6323. A second assessment for the year 1957 was made against Leo L. Miroff individually on May 30, 1958.

3. INT.REV.CODE of 1954, §§ 6331–6332.

4. The Miroffs could not be found and were served by publication under 28 U.S.C. § 1655.

that the insurer in the transaction, and not the insured, was the debtor, both legally and functionally.

The Sullivan decision on the "policy loan" issue rested on the ground that Mrs. Sullivan had the *right to be granted policy loans* to the extent of the cash value, and that she had no obligation to repay the "loans." 333 F.2d at 112. (Emphasis added.) The court applied the general principle stated by Justice Holmes in Parish of Orleans v. New York Life Ins. Co., 216 U.S. 517, 522, 30 S.Ct. 385, 54 L.Ed. 597 (1910), that a "policy loan" created no debt and no personal liability but merely discharged part of insurer's ultimate policy obligation. The court held [5] that the "policy loans" were partial advances of the cash surrender value. That holding expresses Central's theory here.

The Sullivan case, 333 F.2d at 113–114, approved the district court's view, 203 F.Supp. 1, 12 (D.C.Pa.1962), that the interest paid by the insured merely represented "what it is estimated the sum would have earned if it had not been advanced." We accept that view here, against the Government argument that the interest charge stamped the transaction as a loan to Miroff. As to the Government argument that the "precise terms" of an insurance policy, stating that "policy loans" are loans, indicate the intention of a commercial loan, we agree with the court in Sullivan that "form should not be allowed to prevail over substance." 333 F.2d at 113.

The Government argues that this court held, in Federal Life Ins. Co. v. Kemp, 257 F. 265, 269 (7th Cir. 1919), that indebtedness created by premium loans made on the security of the policy alone "remained as a lien on the policy," which could not be offset until termination of the policy. This is to say that the "policy loan" transaction gave Central a lien, which in this case would be junior in priority to the tax lien. A similar argument was made in the Sullivan case, and

rejected. 333 F.2d at 112. The Kemp case is inapposite, for there the court was concerned with premium loans on a policy on which there had been a default in premium payments, and held that, as between the insurer and the policy beneficiaries, the total of such "indebtedness" had to be deducted from the "surrender value" at the time of settlement. A distinguishing factor is that the premium loan in Kemp actually paid one-half of the first ten year cash premiums—the insurer was paying from its own funds 50% of the premiums essential to keep the policy in force. Miroff's "policy loan," however, was paid out of the cash surrender value, not Central's own funds, and not from funds essential to keep the policy in force or for which repayment by Miroff himself was required. Yet it is the cash surrender value which the Government seeks to recover from Central. Kemp does not compel a result contrary to that we have reached, for that case recognizes that whatever "property" the insurer holds for the insured may be depleted in fact by loans made to the insured during the executory period of the insurance contract.

■ We hold that an income tax lien may not be enforced against an insurer who had, without actual notice of the previously recorded lien, made a policy loan to its assured, the delinquent taxpayer, of the full cash value of the unmatured policy.

■ In its brief on appeal the Government also argued that it was entitled at least to the approximately $36.00 which was credited by Central as "interest" prior to actual notice of the tax lien, this amount having exhausted Miroff's cash surrender value under the policy. This point was not raised by the Government in the court below, by pleading, brief or oral argument. In accordance with the established principle that appellate review is ordinarily restricted to questions and issues made and considered and decided in the lower court, we do not

5. 333 F.2d at 114. Judge Hastie dissented in part but agreed that policy loans made before service of notice of levy upon the insurer were not precluded by the tax lien. 333 F.2d at 121, 122.

**484**

reach this minor contention on the facts of this case. 14 Cyclopedia of Federal Procedure § 67.09 (3rd ed. 1965).

For the foregoing reasons, the judgment of the district court is affirmed.