ROBERT W. AND MARY F. MINNIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2363–77.     Filed March 26, 1979.

---

Robert W. Minnis and Mary F. Minnis, pro se.
*Douglas R. Fortney*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $1,670 in petitioners' income tax for 1974. At issue is whether a policy loan against an employee annuity contract purchased by an employer is taxable income to the employee, where the premiums paid were not includable in the employee's gross income.

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioners Robert W. Minnis and Mary F. Minnis, husband and wife, filed a joint income tax return for the calendar year 1974 with the District Director of Internal Revenue, Dallas, Tex. The petitioners were residents of Denton, Tex., on the date the petition herein was filed.

Petitioner Mary F. Minnis, a counselor in the Denton Independent School District, entered into an annuity purchase plan, beginning September 30, 1966, under which her employer, the Denton public schools, agreed to purchase a deferred annuity policy on her life from Northwestern National Life Insurance Co., Minneapolis, Minn. (hereinafter the insurance company). The premiums on the policy, all of which were paid by the Denton public schools, qualified for exclusion from Mary F. Minnis' gross income under section 403(b).[1]

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect in the taxable year at issue.

Sec. 403(b) provides in part:

(b) TAXABILITY OF BENEFICIARY UNDER ANNUITY PURCHASED BY SECTION 501(c)(3) ORGANIZATION OR PUBLIC SCHOOL.—

(1) GENERAL RULE.—If—

(A) an annuity contract is purchased—

(i) for an employee by an employer described in section 501(c)(3) which is exempt from tax under section 501(a), or

(ii) for an employee (other than an employee described in clause (i)), who performs services for an educational institution (as defined in section 151(3)(4)), by an employer which is a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing,

(B) such annuity contract is not subject to subsection (a), and

The annuity contract provides for policy loans and repayments thereof as follows:

### POLICY LOANS AND REPAYMENT

CASH LOANS. The Company will make loans on the sole security and written assignment of this policy. The loan value shall equal the tabular cash value, plus the amount of any dividends left to accumulate at interest. The total amount loaned shall not exceed the loan value at the end of the then current policy year. There shall be deducted from the proceeds of a loan any existing indebtedness on this policy and interest to the end of the current policy year.

INTEREST AND REPAYMENT. Interest shall be at the rate of 4.8 per cent a year, payable in advance. Unpaid interest shall be added to the existing indebtedness and bear interest on the same terms. Any loan may be repaid in whole or in part during the lifetime of the Annuitant prior to maturity of the policy. Failure to repay any loan, or to pay interest, shall not avoid the policy unless the total indebtedness on this policy shall equal or exceed the loan value at the time of such failure nor until 31 days after notice shall have been mailed by the Company to the last known address of the Annuitant.

On October 10, 1974, Mary F. Minnis obtained a $5,000 policy loan from Northwestern National Life Insurance Co. under the terms of the annuity contract. She wanted a short-term loan in order to remodel a house petitioners had purchased. On July 31, 1975, petitioners repaid the loan in full. Petitioners paid $266.73 in interest on the loan.

The petitioners were unaware, at the time Mary F. Minnis applied for the loan and at the time the check representing the loan was negotiated, of respondent's position that such a loan constituted taxable income. The local agent of the insurance company assured petitioners that the Internal Revenue Service would not consider the loan to be taxable income. At the time the annuity contract was issued, respondent had not made clear its position on the taxability of such proceeds.

In February 1975, petitioners learned, when they received a copy of a Form 1099 Information Return which had been filed by the insurance company, that the Internal Revenue Service re-

---

(C) the employee's rights under the contract are nonforfeitable, except for failure to pay future premiums,

then amounts contributed by such employer for such annuity contract on or after such rights become nonforfeitable shall be excluded from the gross income of the employee for the taxable year to the extent that the aggregate of such amounts does not exceed the exclusion allowance for such taxable year. The employee shall include in his gross income the amounts received under such contract for the year received as provided in section 72 (relating to annuities). * * *

garded a loan such as they had received as taxable income. They contacted the insurance company and the Internal Revenue Service in Dallas in an attempt to avoid being taxed on the amount of the loan by repaying it immediately, but waited until July to repay the loan after being informed that prepayment was unlikely to affect their tax liability.

Mary F. Minnis could have obtained an ordinary bank loan but chose the policy loan because the interest rate was 4.8 percent as compared to the bank interest rate of 9 percent.

Mary F. Minnis was 48 years old on October 10, 1974, when the $5,000 policy loan was received. The premiums on the annuity policy are payable until she reaches age 65 when the policy matures. During 1974, Mary F. Minnis did not begin to receive installment or periodic payments under the annuity policy. Thus, the annuity starting date, as that term is used in section 72(c)(4),[2] did not occur during 1974.

## OPINION

The issue for decision is whether a policy loan obtained by petitioner Mary F. Minnis under an annuity contract purchased by her employer is includable in her taxable income in the year obtained, where the premiums paid on the contract were not includable in her income. Petitioners contend that the policy loan should be treated as a conventional loan and, as such, should not be included in taxable income.

Respondent asserts that a policy loan under an employee annuity contract is includable in the employee's gross income under section 72(e)(1)(B), as an amount received under an annuity contract, to the extent it exceeds the consideration paid by the employee, because a policy loan does not create a debtor-creditor relationship for the purposes of that statutory provision. See Rev. Rul. 67–258, 1967–2 C.B. 68.

Initially, it is important to understand that we are not confronted with any contention by respondent that the loan transaction was without substance, i.e., a sham, so as to cause us to

---

[2]Sec. 72(c)(4) states:

ANNUITY STARTING DATE.—For purposes of this section, the annuity starting date in the case of any contract is the first day of the first period for which an amount is received as an annuity under the contract; except that if such date was before January 1, 1954, then the annuity starting date is January 1, 1954.

consider the rationale of the decided cases represented by *Knetsch v. United States,* 364 U.S. 361 (1960), and its progeny. See, e.g., *Salley v. Commissioner,* 55 T.C. 896 (1971), affd. 464 F.2d 479 (5th Cir. 1972); *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). In point of fact, there is no indication that Mary F. Minnis was borrowing against the annuity contract as a means of receiving tax-free cash compensation from her employer. Rather, the evidence shows that she borrowed from the insurance company rather than from a bank because such borrowing carried a lower interest rate and that she intended to, and did, pay back the loan within a short period of time.

Section 72(e) provides:

(e) AMOUNTS NOT RECEIVED AS ANNUITIES.—

(1) GENERAL RULE.—If any amount is received under an annuity, endowment, or life insurance contract, if such amount is not received as an annuity, and if no other provision of this subtitle applies, then such amount—

(A) if received on or after the annuity starting date,[3] shall be included in gross income; or

(B) if subparagraph (A) does not apply, shall be included in gross income, but only to the extent that it (when added to amounts previously received under the contract which were excludable from gross income under this subtitle or prior income tax laws) exceeds the aggregate premiums or other consideration paid.[4]

For purposes of this section, any amount received which is in the nature of a dividend or similar distribution shall be treated as an amount not received as an annuity.

(2) SPECIAL RULES FOR APPLICATION OF PARAGRAPH (1).—For purposes of paragraph (1), the following shall be treated as amounts not received as an annuity:

(A) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract; and

(B) any amount received under a contract on its surrender, redemption, or maturity.

---

[3]Since the loan was received before the annuity starting date, sec. 72(e)(1)(A) is not applicable.

[4]The "consideration paid" is defined by sec. 72(f), which provides, in relevant part:

(f) SPECIAL RULES FOR COMPUTING EMPLOYEES' CONTRIBUTIONS.—In computing * * * for purposes of subsection (e)(1)(B), the aggregate premiums or other consideration paid, amounts contributed by the employer shall be included, but only to the extent that—

(1) such amounts were includible in the gross income of the employee under this subtitle or prior income tax laws; or

(2) if such amounts had been paid directly to the employee at the time they were contributed, they would not have been includible in the gross income of the employee under the law applicable at the time of such contribution.

In the case of any amount to which the preceding sentence applies, the rule of paragraph (1)(B) shall apply (and the rule of paragraph (1)(A) shall not apply).

It is true that a policy loan differs in some respects from an ordinary loan. The issuer of the policy generally has no discretion as to whether to grant a policy loan and the policyholder has no obligation to repay the loan by a set date. If the policyholder fails to repay the loan, the proceeds payable upon maturity of the policy are reduced accordingly. In this sense, the loan is actually an advance payment and, in some contexts, courts have held that a policy loan does not create a debtor-creditor relationship. See, e.g., *Orleans Parish v. N.Y. Life Ins. Co.*, 216 U.S. 517 (1910) (existence of "property" for purposes of State taxation of the insurance company); *United States v. Miroff*, 353 F.2d 481 (7th Cir. 1965), and *United States v. Sullivan*, 333 F.2d 100 (3d Cir. 1964) (both involving the existence of a sufficient interest for purposes of a tax lien).[5]

However, for the purposes of determining a taxpayer's Federal income tax liability, policy loans have generally been regarded as a valid form of indebtedness. Despite the insurance company's lack of recourse against the borrower, this Court has repeatedly recognized that interest paid on a policy loan is deductible as interest on indebtedness under section 163. *Salley v. Commissioner*, 55 T.C. at 903; *Kay v. Commissioner*, 44 T.C. 660, 672 (1965); *Dean v. Commissioner*, 35 T.C. 1083, 1085 (1961); *Emmons v. Commissioner*, 31 T.C. 26, 30 (1958), affd. sub nom. *Weller v. Commissioner*, 270 F.2d 294 (3d Cir. 1959). See also *Coors v. United States*, 215 Ct. Cl. 840, 572 F.2d 826 (1978). But see *Carpenter v. Commissioner*, 322 F.2d 733, 735 (3d Cir. 1963), affg. a Memorandum Opinion of this Court, a case which involved a transaction considered to be without economic substance under the rationale of *Knetsch v. United States, supra.*

Furthermore, the legislative history of section 264, which disallows under certain limited conditions an interest deduction for indebtedness incurred to carry life insurance policies, endowment contracts, or annuity contracts, contains explicit acknowl-

---

[5]It is interesting to note that in both *United States v. Miroff*, 353 F.2d 481 (7th Cir. 1965), and *United States v. Sullivan*, 333 F.2d 100 (3d Cir. 1964), the Government took the position, diametrically opposed to that taken by respondent herein, that a debtor-creditor relationship existed between the policyholder and the insurance company with the policy simply collateral for the loan from the cash surrender value.

edgement that, in general, policy loans are debts for purposes of the interest deduction. H. Rept. 749, 88th Cong., 1st Sess. 61–62 (1963), 1964–1 C.B. (Part 2) 125, 185–186; S. Rept. 830, 88th Cong., 2d Sess. 77–79 (1964), 1964–1 C.B. (Part 2) 505, 581–583.[6]

To be sure, the policy loan herein falls within the literal language of section 72(e)(1) as an "amount * * * received under an annuity * * * contract, if such amount is not received as annuity." See p. 1053 *supra*. But against this literal language stand the provisions of section 72(e)(2), which define "amounts not received as an annuity" in terms of situations where the annuity contract is terminated through a "refund of the consideration paid" and "on its surrender, redemption, or maturity." See p. 1053 *supra*. Clearly, a loan from the cash surrender value does not constitute a termination of the annuity contract or otherwise fall within these definitional terms.

Nor has respondent indicated any statutory language, either in subsection 72(e)(1)(B), section 264, or any other section, from which a distinction can be drawn between policy loans against employee annuity contracts and other policy loans. Yet, we are convinced that Congress considered policy loans to be a valid form of borrowing, except under the circumstances described in section 264, and not a form of income. See H. Rept. 749, *supra;* S. Rept. 830, *supra.*[7]

Finally, we think it appropriate for us to recognize that the transaction involved herein constituted a loan in ordinary par-

---

[6]In enacting sec. 264, Congress did not consider the possible advantages to an employee of receiving an annuity contract purchased by his employer without being taxed on the premiums and then borrowing against that contract. Congress was concerned with loans used to create interest deductions while maintaining policies which increase in value without being currently taxed. See H. Rept. 749, 88th Cong., 1st Sess. 61–62 (1963), 1964–1 C.B. (Part 2) 125, 185–186; S. Rept. 830, 88th Cong., 2d Sess. 77–79 (1964), 1964–1 C.B. (Part 2) 505, 581–583; H. Rept. 1337, 83d Cong., 2d Sess. 31–32 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 38 (1954); H. Rept. 2332, 77th Cong., 2d Sess. 47 (1942), 1942–2 C.B. 372, 410. However, Congress' general view of policy loans, revealed in the legislative history of sec. 264, is relevant herein.

[7]H. Rept. 749, 88th Cong., 1st Sess. 61–62 (1963), 1964–1 C.B. (Part 2) 125, 185–186 states:

"*Your committee recognizes, however, the importance of being able to borrow on insurance policies;* and, therefore, while adopting a provision designed at minimizing the sale of insurance as a tax-saving device, it has been careful in this provision to provide for the retention of rights to borrow on insurance for other than tax-saving purposes without the loss of the interest deduction."

\*      \*      \*      \*      \*      \*      \*

"Your committee desired to be sure that the value of insurance generally would not be decreased by reducing the rights of the individual to borrow on the insurance, as he can in the case of other forms of assets. * * * "

(Emphasis added.)

See also S. Rept. 830, n. 6 *supra.*

lance. In this context, the comment of the Supreme Court that "Common understanding and experience are the touchstones for the interpretation of the revenue laws" (see *Helvering v. Horst,* 311 U.S. 112, 117–118 (1940)) is highly relevant. See *Primuth v. Commissioner,* 54 T.C. 374, 381–382 (1970) (concurring opinion). This is particularly true when one recognizes that loans have traditionally not been considered taxable income, even when the source of repayment is limited to particular property and involves no personal liability. See *Falkoff v. Commissioner,* 62 T.C. 200, 206 (1974); 1 J. Mertens, Law of Federal Income Taxation, sec. 5.12 (1974), and cases collected therein.

We recognize that there is some potential for abuse of policy loans, under section 403(b) employee annuity contracts, by an employee attempting to obtain indirectly, through the interposition of an annuity contract, funds provided as compensation by his employer, without being taxed thereon. Where Congress has considered the risk of abuse to be sufficiently great, it has, by amendment to the same general Code section herein involved (sec. 72), distinguished particular types of policy loans which are to be considered as amounts constructively received under an annuity contract. See section 72(m)(4)(B) (Pub. L. 87–792, sec. 4, effective Jan. 1, 1963), relating to receipt of policy loans by owner-employees under contracts purchased by a trust described in section 401(a) or as part of a plan described in section 403(a). But, in the absence of a similar provision relating to loans against section 403(b) employee annuity contracts, we can find no basis in the statute or its legislative history which would enable us to isolate those policy loans and to tax them in a unique manner. See and compare *Jarecki v. G. D. Searle & Co.,* 367 U.S. 303, 310–311 (1961).

Moreover, in respect of respondent's concern that the proceeds of such a policy loan will escape tax if the receipt of the loan is not the taxable event, we note that there may be another point of time at which a tax might properly be imposed. Any policy loan which is unpaid when the annuity contract matures is charged against the available proceeds at that time (see Rev. Rul. 67–258, *supra*). Such a satisfaction of the loan would in effect be a pro tanto payment of the proceeds of the policy to the policyholder and could well be considered as taxable income at that time to the extent that it exceeds the "consideration paid." See n. 4 *supra*. The question of such treatment is not before us in

this case and, consequently, we leave the actual disposition of such an issue to another day.

We recognize that our reasoning and the conclusion which flows therefrom are contrary to Rev. Rul. 67–258, *supra*. But it has long been held that the courts are not bound by revenue rulings since, as we stated in *Estate of Lang v. Commissioner*, 64 T.C. 404, 407 (1975), on appeal (9th Cir., Jan. 6, 1976), they are "simply the contention of one of the parties to the litigation, and * * * entitled to no greater weight." See *Stubbs, Overbeck & Associates v. United States*, 445 F.2d 1142, 1146–1147 (5th Cir. 1971).[8]

Although the issue is not free from doubt, we hold that a policy loan is not "an amount received under the contract" within the meaning of section 72(e)(1)(B) and that there is no statutory basis for distinguishing policy loans against employee annuity contracts qualified under section 403(b) from other policy loans for the purpose of applying section 72(e)(1)(B).

*Decision will be entered for the petitioners.*

---

[8]It is not without significance that Rev. Rul. 67–258 was not issued until several years after Congress had enacted sec. 72(m) specifically making taxable loans received by owner-employees. See p. 1056 *supra*. In this context, it appears that respondent has sought to expand a limited statutory provision into one of general application. See also Rev. Rul. 69–421, 1969–2 C.B. 59, 77–78 (applying principle of Rev. Rul. 67–258 to loans from employee pension, annuity, profit-sharing, and stock bonus plans). If Rev. Rul. 67–258 is a correct interpretation of the law, it presumably would have been so since sec. 72(e) was enacted in the original Internal Revenue Code of 1954. Under such circumstances, the subsequent enactment of sec. 72(m) was unnecessary, i.e., mere surplusage. Compare *Julia R. & Estelle L. Foundation v. Commissioner*, 70 T.C. 1, 9 (1978), on appeal (2d Cir., Sept. 22, 1978).