PAT E. SASSER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; LOIS J. SASSER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sasser v. Commissioner
Docket Nos. 8179-78, 8180-78.
United States Tax Court
T.C. Memo 1982-385; 1982 Tax Ct. Memo LEXIS 359; 44 T.C.M. (CCH) 404; T.C.M. (RIA) 82385; July 12, 1982. *359 1. Unexplained deposits in petitioners' savings accounts determined to be taxable income to petitioners 2. Loans made to owner-employee by issuing insurance company on an annuity policy issued under an HR-10 retirement plan covering the owner-employee are taxable to the owner-employee as income under secs. 72(m)(4)(B) and 72(a), I.R.C. 1954. 3. Petitioners failed to prove petitioner made a direct contribution of $832.85 to the HR-10 plan in 1974. 4. Petitioners are liable for the addition to tax provided in sec. 6653(a), I.R.C. 1954. Pat E. Sasser, pro se. James R. Turton, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: [1]
Addition to Tax
Year
Deficiency
Sec. 6653(a) [2] *360 1974
$4,129.35
$206.47
1975
7,888.91
394.45
After concessions by the parties, the issues remaining for decision are (1) whether for the taxable year 1974 petitioners had unreported taxable income in the amount of $3,652.70; (2) whether for the taxable years 1974 and 1975 petitioners realized taxable income in the amounts of $462.31 and $4,226.95, respectively, by borrowing such amounts from an H.R. 10 Retirement Plan; (3) whether for the taxable years 1974 and 1975 petitioners are entitled to a deduction for contributions made to an H.R. 10 Retirement Plan and, if so, the amount of such deduction; and (4) whether petitioners are liable for additions to tax for both years under section 6653(a). FINDING OF FACTS Petitioners Pat E. Sasser and Lois J. Sasser, husband and wife, resided in Amarillo, Tex., at the time of filing the petition herein. They filed a joint Federal income tax return for both of the taxable years in issue with the Internal Revenue Service, Austin, Tex. Lois J. Sasser is a party herein solely by having filed a joint return with Pat E. Sasser (hereinafter petitioner). In the notice of deficiency, respondent determined, by analysis of petitioner's deposits in several savings and loan companies, *361 that petitioner had unreported income in the amount of $8,161.63 in 1974, and $30,674.89 in 1975. Respondent also increased petitioner's taxable income by disallowing deductions for depreciation, contributions to a pension plan, and adjusting certain other expense deductions. Respondent increased petitioner's taxable income for 1974 by disallowing certain business expenses, and decreased petitioner's taxable income for 1975 by allowing additional business expenses. By oral stipulation at the opening of the trial the parties agreed to certain modifications to the adjustments in the notice of deficiency, which can be found in the transcript, leaving us with the items cited above for our determination. The evidence submitted was sparse, and much of it irrelevant and confusing. Since petitioner did not favor us with a brief, we have done our best to sort out the facts and petitioner's arguments as best we can. During the taxable years 1974 and 1975, petitioner operated his own business known as Pat E. Sasser & Associates. This business consisted of presenting adult education courses, which were intended to develop, interalia, self confidence and public speaking ability in the student. *362 Petitioner charged each student about $300 for each course. On March 8, 1974, petitioner withdrew $3,966.16 from an account at the Imperial Savings Association of Amarillo for living expenses. He testified that he then discovered he "had withdrawn too much," and decided to redeposit a portion of the amount, so that the unneeded money would earn interest. Petitioner thereafter made the following deposits into either the Panhandle Savings and Loan Association (hereinafter Panhandle) or the Security Federal Savings and Loan Association (hereinafter Security Federal), which he claims were redeposits of the funds withdrawn from Imperial: Place
Amount
Date
of deposit
$326.00
Mar. 13, 1974
Panhandle
238.28
May 10, 1974
Security Federal
227.91
June 11, 1974
Security Federal
107.64
July 18, 1974
Security Federal
488.62
July 18, 1974
Security Federal
45.45
Aug. 23, 1974
Security Federal
404.00
Aug. 23, 1974
Panhandle
118.72
Sept. 9, 1974
Security Federal
307.00
Oct. 4, 1974
Panhandle
239.53
Nov. 1, 1974
Security Federal
32.77
Nov. 11, 1974
Security Federal
141.78
Dec. 9, 1974
Security Federal
$2,677.70
Petitioner testified that sometime in late 1973 or early 1974, he loaned his son "around $4,000" to buy a car. He could not remember *363 either the exact date or amount of this loan. No terms were provided for the payment of either interest or principal on the loan, and petitioner testified that his son was to pay him back "whenever he could." Petitioner could not recall where the funds for this loan had come from, although he testified that a portion may have come from cash kept at home. During 1974 the following amounts were deposited in either Panhandle or Security Federal, which, according to petitioner, constituted repayment of the above loan: Place of
Amount
Date
deposit
$278
Jan. 31, 1974
Panhandle
25
Sept. 9, 1974
Security Federal
307
Nov. 1, 1974
Security Federal
365
Nov. 8, 1974
Security Federal
$975
Petitioner did not report any of the above-noted bank deposits as income on his 1974 tax return. Respondent determined that such deposits constituted unreported taxable income and accordingly increased petitioner's taxable income by $3,652.70. On April 18, 1967, petitioner established an HR-10 retirement plan with the Southland Life Insurance Co. The plan was funded with a retirement life income policy issued by Southland. Pursuant to this plan, petitioner was to pay premiums of $1,198.79 per year until April 18, 1993, the *364 maturity date of the plan.At that date, petitioner would be entitled to receive monthly retirement payments of $239.77. The retirement plan also entitled petitioner to borrow up to an amount equal to the cash surrender value of the policy. The following reflects the transactions which occurred with respect to this retirement plan during 1974 and 1975: 1974
Transaction [3] *365 Date
Debit
Credit
Interest added 3(a)
Apr. 18
$246.97
APL 3(b)
Aug. 18
104.16
Interest added
4.16
Loan payment
Oct. 2
$103.36
Unearned interest
3.36
APL
Oct. 18
103.08
Interest added
3.08
Loan payment
Oct. 24
100.00
APL
Nov. 18
203.79
Interest added
3.79
Total
$669.03
$206.72
1975
APL
Jan. 18
$101.50
Interest added
1.50
APL
Feb. 18
107.47
Loan payment
Apr. 18
200.00
Interest added
Apr. 18
7.47
Loan payment
Apr. 24
271.52
APL
June 18
107.58
Interest added
5.38
APL
July 18
107.02
Interest added
4.82
Policy loan 3(c)
Sept. 25
3,309.67
Interest added
115.10
APL
Aug. 18
106.45
APL
Sept. 18
724.51
Total
$4,698.47
$471.52 Petitioner did not report as income the amounts debited to his account (loaned), as indicated above, on his returns filed for 1974 and 1975, respectively. For the taxable year 1974, petitioner deducted $832.85 for contributions claimed to have been made to the retirement plan; he claimed no deduction for contributions to the plan on his 1975 return. Respondent determined that the amounts loaned to petitioner from his retirement plan, as indicated in the "Debit" column above, were includable in his taxable income for the years loaned. He further determined that petitioner was not entitled to a deduction of $832.85 for contributions to the plan in 1974, as claimed, because it was not established that the payment had been made, but that petitioner was entitled to deductions for contributions to the plan in the amounts of $206.72 for 1974 and $471.52 for 1975. *366 Accordingly, respondent increased petitioner's taxable income for 1974 by $1,295.16 [4] and for 1975 by $4,226.95. [5]
OPINION The first issue is whether for the taxable year 1974 petitioner had unreported income in the amount of $3,652.70. Petitioner claims the bank deposits which respondent presently claims represent taxable income for 1974 actually represented previously taxed income. Specifically, he claims that the source of $2,672.70 of the bank deposits was from a transfer of funds from his account at Imperial Savings Association of Amarillo to either Panhandle or Federal Security. Petitioner claims that the remaining $925 in question was from the repayment of a loan he had made to his son. Respondent maintains that the bank deposits in question constituted taxable income. He asserts that, as to the amounts petitioner claims to be a transfer of funds from one savings account to another, the deposits were from unreported income from his business. In support of this he points out that the deposits were "regular, periodic, and *367 for odd amounts." With regard to amounts claimed to be the repayment of a loan, respondent claims that petitioner's testimony was evasive and contradictory, and that petitioner has failed to carry his burden of proof. The bank deposits method is a proper means of reconstructing income. See Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Respondent's determination that bank deposits are includable in income is presumptively correct, and the burden is on petitioner to overcome that presumption. Nicholas v. Commissioner,70 T.C. 1057, 1064 (1978). In the present case, we find that petitioner has failed to meet that burden. Throughout the period during which the deposits were made, petitioner was engaged in his adult education business, for which he charged about $300 per student per course. The deposits began on March 13, 1974, only 5 days after the withdrawal of $3,966.10 from Imperial Savings Association of Amarillo, and were made regularly and periodically for a period of 9 months. [6] The deposits in question were in varying amounts, and on four separate occasions there were multiple deposits on the same day. Thus, the timing, pattern, *368 and character of the deposits gives much credence to respondent's assertion that they constituted proceeds from his business. [7] Also, we note that petitioner's testimony was inconsistent and casts doubt upon his credibility. He testified that, after discovering he had withdrawn more savings than was needed for his living expenses, he redeposited the excess funds, down to the penny, so as to keep up with inflation. Yet, he also testified that at least a portion of the alleged loan to his son was from cash he had saved at home. This explanation overstretches our credulity.Furthermore, with regard to such loan, petitioner could not recall either the exact date that it was made or the exact amount loaned, and he specifically testified that no terms existed for the payment of interest or principal on the loan. Petitioner offered no evidence, other than his own uncorroborated testimony, that there was a loan or that the deposits were repayments on a loan. In view of the foregoing and the record as a whole, we conclude *369 that petitioner has failed to meet his burden of proof, and therefore we sustain respondent on this issue. The next issue is whether, for the taxable years 1974 and 1975, petitioner realized taxable income as a result of his borrowing certain amounts from an HR-10 retirement plan which he had previously established. Petitioner claims that he only borrowed funds against the cash surrender value of his retirement policy and that these borrowed funds do not constitute taxable income. Respondent claims that the borrowed funds constitute amounts received by an owner-employee under the retirement contract pursuant to section 72(m)(4)(B), and therefore such amounts constitute taxable income under section 72(a). The only evidence presented on this issue was a copy of the one-page retirement life income policy and the list of the transactions occurring during the taxable years with respect to the plan as set forth in our findings of fact. We have no evidence of whether premiums on the policy were paid directly by petitioner nor any understandable explanation of what the list of transactions actually represented. During the trial petitioner simply relied on Minnis v. Commissioner,71 T.C. 1049 (1979), *370 in arguing that the policy loans were not taxable income. On brief, respondent merely quoted section 72(m)(4)(B) as authority for treating all the automatic premium loans, the interest added items, and the policy loan as taxable income, and sought to distinguish Minnis.We must sustain respondent on this issue because we think section 72(m)(4)(B), coupled with section 72(a), does make loans to an owner-employee on a retirement policy taxable as ordinary income. [8]
With the passage of the Self-Employed Individuals Tax Retirement Act of 1962, [9] many of the favorable tax advantages available to employers who established qualified retirement *371 plans for their employees were extended to self-employed individuals. [10] Specifically, sections 401(c)-(e) provide rules for the establishment of a qualified retirement plan by a self-employed individual (otherwise known as a Keogh or H.R. 10 Plan). After a qualified retirement plan is established, contributions made thereto are deductible, section 404(a), subject to certain limitations in the amount of that deduction. Section 404(e). Pursuant to section 403(a), amounts received under a qualified retirement plan are includable in gross income in accordance with section 72. In the case of a self-employed individual, section 72(m)(4) provides special rules for determining when an amount is considered received. In particular, section 72(m)(4)(B) provides as follows: (4) AMOUNTS CONSTRUCTIVELY RECEIVED.-- (B) LOANS ON CONTRACTS.--If during any taxable year, an owner-employee receives, directly or indirectly, any amount from any insurance company as a loan under a contract purchased * * * as part of a plan described *372 in section 403(a), and issued by such insurance company, such amount shall be treated as an amount received under the contract. An "owner-employee" is described in section 401(c)(3) as, interalia, "an employee who owns the entire interest in an unincorporated trade or business." See section 1.72-17(a), Income Tax Regs. Thus, while as a general rule loan proceeds do not constitute taxable income, even in the case of a loan made against the cash surrender value of an annuity contract, Congress has specifically provided that, in the case of a loan made to an "owner-employee" by the insurance company with whom such "owner-employee" has established a retirement plan described in section 403(a), the amount of the loan is treated as an amount received under the retirement plan. See Minnis v. Commissioner,71 T.C. 1049, 1056 (1979). [11] *373 In the present case, petitioner owned his own business and, from what we can tell from the little evidence presented, he had no employees. Therefore, we conclude that he was an "owner-employee" within the meaning of section 72(m)(4)(B). Furthermore, respondent has asserted, and petitioner has not contested, that the retirement plan in question was described in section 403(a) (e.g., a qualified retirement plan). [12] Therefore, we find that section 72(m)(4)(b) is applicable to the case before us. The H.R. 10 retirement plan herein was issued by the Southland Insurance Company. That same company made loans to petitioner, against the cash surrender value of his policy, of $669.03 and $4,698.17 in 1974 and 1975, respectively. Thus, pursuant to section 72(m)(4)(B), these amounts are treated as amounts received under the contract and are taxable pursuant to section 72(a). [13] Petitioner is, however, entitled to a deduction for contributions made to the *374 retirement plan in the way of loan repayments made in the amounts of $206.72 and $471.52 for the taxable years 1974 and 1975, respectively. See secs. 404(a) and (f). Respondent has recognized this by netting these repayments against the loans and charging petitioner with only the net amounts as income from the loans. Further, because no evidence was presented by petitioner in support of his claimed deduction of $832.85 in 1974 for contributions made to the HR-10 retirement plan, respondent's denial of that deduction is sustained. Petitioner offered no evidence relative to the addition to tax for negligence under section 6653(a) determined by respondent, and made no mention of it at trial, so we assume he has conceded the issue. In any event, he has failed to prove error in respondent's determination so we conclude the addition *375 to tax is applicable. Decisions will be entered under Rule 155.
Footnotes
1. Because petitioners each filed a petition in response to respondent's notice of deficiency, they were each assigned a separate docket number. However, these cases have been consolidated for purposes of trial, briefing, and opinion.↩
2. All Section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue.
3. The only explanation we have of the various items listed was given orally by petitioner and respondent's counsel. As we understand it: (a) The "Interest added" transactions indicate that an amount equal to the interest which had accrued on the policy was borrowed against to pay the premium owed. (b) APL stands for Automatic Premium Loan. These amounts were automatically (without petitioner's request) loaned to petitioner by applying them to the premium owed. (c) Although not entirely clear from the facts, this amount was apparently used for purposes other than to pay premiums on the retirement plan.↩
4. The debits ($669.03) minus the credits ($206.72) plus the amount claimed and disallowed ($832.85). ↩
5. The debits ($4,698.47) minus the credits ($471.52).↩
6. This includes all deposits made both with respect to the alleged transfer of funds and the alleged loan repayments.↩
7. See Dixon v. Commissioner,T.C. Memo. 1979-111↩.
8. It occurs to us that if the automatic premium loans and the interest added items are considered to be constructively received by petitioner as amounts received under the contract by virtue of section 72(m)(4)(B) and thus taxable as an amount received as an annuity under sec. 72(a), it could be argued that those amounts, which are being taxed to petitioner, should be allowed as deductions for contributions made to the HR-10 plan by petitioner. However, this has not been suggested or discussed by either party and we will go no further with it here.↩
9. The Self-Employed Individuals Tax Retirement Act of Oct. 10, 1962, Pub. L. 87-792, 76 Stat. 809-831. ↩
10. See H. Rept. 378, 87th Cong., 1st Sess. (1961), 1962-3 C.B. 261↩.
11. Petitioner relied on Minnis v. Commissioner,71 T.C. 1049 (1979), in support of his position herein. However, the taxpayer in that case was not an "owner-employee" and was not subject to the constructive receipt rules of sec. 72(m)(4)(B). In fact, the opinion in Minnis specifically distinguishes that case, which involved an employee, from a case involving an owner-employee subject to sec. 72(m)(4)(B). Consequently, that case is not controlling on the facts before us.
12. In this regard, it is noteworthy that petitioner deducted the amount of his alleged contributions on his 1974 tax return.↩
13. The evidence was unclear as to whether the amounts includable in income had been deducted in prior years when contributed. However, sec. 403(a) requires inclusion pursuant to sec. 72, whether or not such amount had been previously deducted. Furthermore, we have no evidence of petitioner's investment in the contract to which sec. 72(b) might be applicable.↩