HARRY DEVERN DEAN AND MARY JO DEAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dean v. Commissioner
Docket No. 23218-90
United States Tax Court
T.C. Memo 1993-226; 1993 Tax Ct. Memo LEXIS 230; 65 T.C.M. (CCH) 2757; May 24, 1993, Filed *230 Decision will be entered for respondent. Harry Devern Dean and Mary Jo Dean, pro se. For respondent: Howard Levine and Jane T. Dickinson. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined a deficiency in petitioners' Federal income tax in the amount of $ 10,111.16 for taxable year 1988. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. For taxable year 1988, the issues for decision are: (1) Whether petitioners received a taxable distribution of $ 15,625 upon termination of a tax-deferred annuity which amount includes the outstanding balance of loans taken against the annuity in years prior to termination. We hold that they did. (2) Whether petitioners are liable for the addition to tax pursuant to section 72(t) for the early distribution from Mrs. Dean's qualified retirement plan. We hold that they are. (3) Whether petitioners' Schedule C income is subject to self-employment tax pursuant to section 1401. We hold that it is. FINDINGS OF FACT Some of the facts have been stipulated and are *231 found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Eustis, Florida, at the time they filed the petition in this case. Petitioners filed a joint return for taxable year 1988. All references to petitioner in the singular refer to Mrs. Dean. Background
During 1985 through 1988, petitioner was employed by the school board of Dade County, Florida. In September 1985, petitioner participated in a tax-sheltered annuity plan offered through her employer and Frank J. Brennan, P.A. (Brennan), and executed by National Western Life Insurance Co. (National). The plan qualified under section 403(b)(1). By letter dated September 3, 1985, Brennan congratulated petitioner on a wise decision to invest in the annuity and informed her that "TEFRA" guidelines permit tax-free loans against her qualified plan for a period of up to 5 years unless the proceeds were used in connection with the purchase or improvement of a principal residence. In that case, the 5-year rule would not apply. Additionally, petitioner was informed that if all or any portion of a policy loan was outstanding at the end of 5 years, and the proceeds *232 were not used in connection with a principal residence, the amount must be reported as ordinary income at that time. On four occasions during 1985 and 1986, petitioner borrowed in total approximately $ 10,000 against her annuity contract. Petitioner used the borrowed funds to make substantial improvements to petitioners' principal residence. The policy loan agreements reflect that petitioner elected Federal income taxes not be withheld from the taxable portion of the loan. Petitioner declared the proceeds of the loans fell under section 72(p) and indicated it was not petitioner's intention to repay the loans within 5 years from the date of the issuance of the loan checks. During 1987, no contributions were made to petitioner's annuity, nor did petitioner borrow any further sums against the annuity contract. Petitioner never made repayment on these loans. In 1986, petitioner was informed that the company which sold her the annuity was under some type of investigation, its assets were frozen, and petitioner would be notified when the investigation was complete. When the assets were no longer frozen, petitioner, having lost confidence in the company, decided to take her money *233 out of the account. In 1988, petitioner terminated the annuity. National issued petitioner a Form 1099-R in the amount of $ 15,625, her account balance as of December 31, 1987, without reduction for the outstanding loans. National also issued a check to petitioner for the difference between her account balance and the amount of outstanding loans including interest. Petitioner did not roll over any portion of the distribution to a new qualified plan or account. Deficiency
Petitioners did not report any amount with respect to the distribution or loans from the annuity plan on their 1988 Federal income tax return. In the statutory notice of deficiency issued to petitioners with respect to taxable year 1988, respondent determined petitioners were taxable on the gross distribution in the amount of $ 15,625. Respondent also determined petitioners were liable for the 10-percent additional tax pursuant to section 72(t) for early distributions from a qualified retirement plan. Additionally, respondent determined petitioners were liable for payment of self-employment tax for taxable year 1988 in the amount of $ 4,179. This figure was based upon Mr. Dean's net self-employment *234 earnings for 1988 in the amount of $ 32,099.04. OPINION The first issue for our consideration is whether petitioners received a taxable distribution from petitioner's annuity plan in the amount of $ 15,625 in taxable year 1988. Section 403 provides the following: (b) Taxability of Beneficiary Under Annuity Purchased By * * * Public School. -- (1) General Rule. -- If -- (A) an annuity contract is purchased -- * * * (ii) for an employee who performs services for an educational organization * * *, by an employer which is a State, * * *
* * * The amount actually distributed to any distributee under such contract shall be taxable to the distributee (in the year in which so distributed) under section 72 (relating to annuities). * * *
Section 72[1] provides the following: (p) Loans Treated as Distributions. -- * * * (1) Treatment as distributions. -- (A) Loans. -- If during any taxable year a participant or beneficiary receives (directly or indirectly) any amount as a loan from a qualified employer plan, such amount shall be treated as having been received by such individual as a distribution under such plan. * * * (2) Exception for certain loans. -- *235 (A) General Rule. -- Paragraph (1) shall not apply to any loan to the extent that such loan (when added to the outstanding balance of all other loans from such plan whether made on, before, or after August 13, 1982), does not exceed the lesser of -- (i) $ 50,000,* * * * * * (ii) the greater of (I) one-half of the present value of the nonforfeitable accrued benefit of the employee under the plan, or (II) $ 10,000.
* * * (B) Requirement that loan be repayable within 5 years. -- (i) In general. -- Subparagraph (A) shall not apply to any loan unless such loan, by its terms, is required to be repaid within 5 years. (ii) Exception for home loans. -- Clause (i) shall not apply to any loan used to * * * substantially rehabilitate any dwelling unit * * * used * * * as a principal residence of the participant * * *. [2]
*236 During 1985 and 1986, petitioner borrowed against her annuity contract on four separate occasions. As of December 31, 1986, the outstanding balance on her loan account was approximately $ 10,000. Petitioner used the loan proceeds to "substantially rehabilitate" her principal residence. As of December 31, 1987, no repayment on the loans had been made, and in 1988, petitioner terminated the annuity contract. In accordance with this termination, National deducted the amount of the outstanding loans from petitioner's account balance and issued her a check for the difference. Subsequently, petitioner received a copy of a Form 1099-R which had been filed by National with the Internal Revenue Service reflecting a gross distribution in the amount of $ 15,625 in 1988, equal to the amount of the account balance as of the end of 1989 without reduction of the outstanding loans. Petitioners did not report any amount of the annuity distribution on their Federal income tax return for taxable year 1988. Petitioners argue no tax is due with respect to the policy loans because the amounts borrowed had been used for home improvements on their principal residence as authorized by section 72(p) *237 and are therefore excludable from gross income. Petitioners misunderstand the application of section 72(p). Section 72 is located in subtitle A, chapter 1, subchapter B, part II of the Code entitled "Items Specifically Included in Gross Income". Section 72, therefore, is an inclusion provision of the Code, not an exclusion provision. Section 72(p) does permit, however, the tax-free withdrawal of funds from a qualified plan by a plan participant, in the form of a loan, if the loan is paid back within 5 years from the date of the policy loan. There is an exception to this 5-year rule in the case of loan proceeds being used to substantially rehabilitate the principal residence of a plan participant. Sec. 72(p)(2)(B)(ii). This exception to the 5-year rule, however, does not permit a plan participant to withdraw funds tax free, use the funds for substantial home improvements, never repay the loan, and never incur tax on these funds. The exception allows taxpayers to defer the payment of income tax upon receiving the policy loan proceeds where the proceeds are used to substantially rehabilitate the principal residence of the plan participant until the policy matures. If the loan *238 is paid back before the policy matures, then the plan participant simply includes any amounts received with respect to plan distributions in accordance with section 72 as if no loan was ever made. Any policy loan which is unpaid when the annuity contract matures, however, is charged against the available proceeds at that time, and such a satisfaction of the loan has the effect of a pro tanto payment of the proceeds of the policy to the policyholder and constitutes taxable income at that time. Minnis v. Commissioner, 71 T.C. 1049, 1056 (1979). We find no reason to deviate from this treatment in the case of a termination by the plan participant. Section 72(p) does not provide that loan proceeds used to substantially rehabilitate a plan participant's principal residence are excludable from gross income upon the termination of the participant's interest in the plan, as contended by petitioners. Accordingly, we hold petitioners received a taxable distribution of $ 15,625 as determined by respondent in taxable year 1988 upon termination of petitioner's tax-deferred annuity. The second issue for our consideration is whether petitioners are liable for *239 the 10-percent tax on petitioner's early distribution from her retirement plan. Section 72(t) provides: (1) Imposition of additional tax. -- If any taxpayer receives any amount from a qualified retirement plan * * *, the taxpayer's tax * * * for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.
Section 72(t)(2) provides for certain exceptions to the general rule contained in paragraph (1). Petitioner, however, offered no evidence to suggest she fit within any of these enumerated exceptions. The legislative history suggests that one of the reasons for enacting section 72(t) was to deter the use of retirement savings for nonretirement use. H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 1, 728-729; S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 1, 612-613. Petitioner voluntarily terminated her annuity in taxable year 1988 and failed to roll it over into another qualified plan; therefore, petitioners are liable for the 10-percent additional tax pursuant to section 72(t) as determined by respondent.
The third *240 issue for our consideration is whether petitioners are liable for self-employment tax on Mr. Dean's net self-employment earnings for 1988 in the amount of $ 32,099.04. Section 1401 provides that every individual who has self-employment income for any taxable year must pay, in addition to other taxes, a self-employment tax. Petitioners bear the burden of proof on this issue. Rule 142(a). At trial, petitioners offered no evidence on this issue and have therefore failed to meet their burden of proof. Accordingly, we hold petitioners liable for the self-employment tax for taxable year 1988 as determined by respondent. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Sec. 72 was amended by sec. 236 of the Tax Equity And Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, 509, to include the provisions under sec. 72(p)↩.
2. Sec. 72(p)(2)(B)(ii)↩ appears here as it did before it was amended by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1134(d), 100 Stat. 2484, which allowed a home loan exception only in the case of acquiring a dwelling unit used as a principal residence of the plan participant. This amendment is effective for loans made, renewed, renegotiated, modified, or extended after Dec. 31, 1986.