T.C. Summary Opinion 2005-26

UNITED STATES TAX COURT

JULIE J. REVOLINSKI AND KENNETH T. WHITE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3860-04S.              Filed March 14, 2005.

Julie J. Revolinski and Kenneth T. White, pro sese.

<u>Gavin L. Greene</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2001,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 2001 of $1,342.

The issue for decision is whether a distribution of $8,944 resulting from the surrender of a life insurance policy is includable in petitioners' gross income. We hold that it is.

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioners resided in Santa Cruz, California.

On July 17, 1987, Kenneth T. White (petitioner) acquired a universal life insurance policy (the policy) with Pacific Mutual Life Insurance Co. (Pacific Life).

The policy entitled petitioner to withdraw funds against the policy's accumulated value. The policy defined accumulated value as the net amount of premiums (premiums paid less premium load charge) plus interest and dividends earned minus deductions (e.g., withdrawal amounts, mortality charges, administrative charges, insurance loads, and rider chargers).

The policy also entitled petitioner to borrow against the policy as collateral up to the loan value available. The policy

defined loan value as the cash surrender value less loan interest and fees associated with the policy. The policy defined cash surrender value as the accumulated value less the surrender charge and any policy loan debt. The policy required loan repayment at any time before the lapse of the policy, but loan interest was payable in advance, with any unpaid interest to be added to the loan principal.

Between 1987 and 1992, petitioner paid premiums on the policy as follows:

| Year | Amount Paid |
|------|-------------|
| 1987 | $6,260 |
| 1988 | 780 |
| 1989 | 520 |
| 1990 | 5,520 |
| 1991 | 1,000 |
| 1992 | 485 |
| Total | 14,565 |

Between December 1993 and October 1994, petitioner contacted Pacific Life to request funds from the policy allegedly for a downpayment on a home.[2] Petitioner received the following distributions:

| Date Processed | Loan Amount | Interest Charged | Payment Amount |
|----------------|-------------|------------------|----------------|
| 12/13/93 | $5,159 | $159 | $5,000 |
| 2/17/94 | 2,044 | 44 | 2,000 |
| 5/17/94 | 1,513 | 13 | 1,500 |
| 10/3/94 | 7,716 | 316 | 7,400 |
| Total | 16,432 | 532 | 15,900 |

---

[2] It appears that petitioner made his requests by telephone.

Pacific Life classified these distributions as policy loans.  For each distribution, Pacific Life issued to petitioner a policy loan statement indicating the amount of the loan, the interest charged, and the outstanding loan balance.  Petitioner was not required to sign any formal loan agreements with respect to these distributions.  Petitioner never contacted Pacific Life regarding the classification of these distributions as policy loans.

Throughout the life of the policy, Pacific Life sent petitioner an account statement at the end of each policy year reporting the following: Beginning accumulated value for the year, premiums paid, premium load charge, cost of insurance charges (mortality charges, administrative charges, insurance loads, and rider charges), interest earned, withdrawal amount, dividends earned, the accumulated value at the end of the year, current surrender charge, current loan debt (including unpaid loan interest), and current cash surrender value.  According to the account statements, the accumulated value of the policy on July 16, 1988, increased from $5,729 to $23,467 as of July 16, 2001.

On August 7, 2001, petitioner surrendered the policy.  As of that date, petitioner's investment in the policy was $14,565, the accumulated value was $23,509, the outstanding loans plus accrued interest payable was $23,125, and the cash surrender value

totaled $384 (i.e., $23,509 less $23,125), which petitioner received in cash.

For the taxable year 2001, Pacific Life issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting a gross distribution of $23,509 and a taxable distribution of $8,944. Pacific Life computed the taxable distribution as the accumulated value of $23,509 less petitioner's investment in the policy of $14,565.

Petitioners did not report the distribution of $8,944 on their 2001 Federal income tax return. Respondent determined that petitioners received gross income of $8,944 from the surrender of the policy.

Petitioners timely filed with the Court a petition challenging respondent's determination. Paragraph 4 of the petition states, in part:

> I took out most of the cash surrender value of this policy in 1993-94 totaling $14,400 as down payment on a home. I made no payments, nor did I receive any money from this account until 2001 when I received $384 remaining cash value to allow the policy to lapse. Total distributions=$14,784. The reported $8,945 was kept by Pacific Life in fees and charges and never distributed to us. (Note: The insurance load was paid by interest earned on my premium; during the 13 years the policy was in force it totaled~$3,276. If this value is taxable, we would happily pay any tax due on it.)

Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). The burden of proof may shift to the Commissioner under section 7491 in certain circumstances. On the basis of the record, we hold that section 7491(a) does not operate to place the burden of proof on respondent; in short, petitioners did not introduce testimony evidence sufficient to place in doubt the exactitude of the documentary record.

Gross income includes income from whatever source derived including, but not limited to, life insurance contracts.[3] Sec. 61(a)(10). As relevant to this case, any amount which is received under a life insurance contract on its complete surrender, and which is not received as an annuity, shall be included in gross income to the extent it exceeds the investment in the contract. Sec. 72(e)(1)(A), (5)(A), (C), (E)(ii). The investment in the contract is defined generally as the aggregate amount of premiums or other consideration paid for the contract less amounts previously received under the contract, to the extent such latter amounts were excludable from gross income. Sec. 72(e)(6).

---

[3] The parties do not dispute that the policy is a life insurance contract. See sec. 7702(a).

Petitioners contend that Pacific Life incorrectly computed the amounts on Form 1099-R using the policy's accumulated value rather than the cash value.  Petitioners argue that the distributions were withdrawals of petitioner's investment and that Pacific Life classified the distributions as loans solely for internal bookkeeping purposes.  Petitioners allege that petitioner withdrew his investment of $14,565 as well as accumulated interest of $932 by October 1994 and that petitioner received the cash surrender value of $384 in August 2001.  Under their theory, petitioners compute that they received a gross distribution of $15,881 ($14,565 + $932 + $384) and that only the accumulated interest of $1,316 that they actually received is taxable.  Petitioners' contention is misplaced.

Petitioners now challenge for the first time Pacific Life's classification of the distributions as true loans.  With respect to each distribution, however, petitioner received a policy loan statement clearly identifying each distribution as a policy loan. In addition, petitioner received annual statements indicating the outstanding loan balance including interest payable and the effect of the loan balance to the cash surrender value of the policy.  We find it remarkable that petitioners contend that the distributions were not loans when, throughout the life of the policy, petitioner never contacted Pacific Life to dispute Pacific Life's classification of the distributions as loans.

Based on the entirety of the record, there is no evidence, other than petitioner's self-serving testimony, that the distributions were anything other than loans under the terms of the policy. For Federal income tax purposes, petitioner's policy loans constituted bona fide indebtedness rather than a withdrawal of his investment. See Atwood v. Commissioner, T.C. Memo. 1999-61.

Next, petitioners argue that Pacific Life's internal loan classification created a "fictitious tax liability". Under petitioners' reasoning, petitioner withdrew the corpus of his investment, which should have reduced the accumulated value, but because Pacific Life classified the distributions as loans for internal bookkeeping purposes, the accumulated value was artificially inflated and subsequent interest earned was computed on the basis of the inflated accumulated value. With respect to the interest accruing on the inflated accumulated value, petitioner argues that the interest of $8,944 credited to his account is not taxable to him because he did not actually receive it. Petitioner claims that he received only $15,881 in actual cash payments and that Pacific Life kept the $8,944 to pay fees and charges associated with the policy. We disagree.

There is no evidence in the record that Pacific Life classified the distributions as loans solely for internal accounting purposes. As stated earlier, the distributions at issue were policy loans. Petitioner did not assume any personal

liability for repayment of the loans, and when he surrendered the policy, the outstanding loan debt (including interest) was charged against the available proceeds in the policy's accumulated value. This satisfaction of the policy loans was in effect a pro tanto payment of the policy proceeds to petitioners and constituted income to them. See Minnis v. Commissioner, 71 T.C. 1049, 1056 (1979).

In the alternative, petitioners argue that taxable gain is calculated using the cash value rather than the accumulated value. In support of this contention, petitioners rely on the use of the term "cash value" in section 72(e)(3)(A) regarding the allocation of amounts to income and investment. Section 72(e)(3)(A) provides, in part:

> (3)  Allocation of amounts to income and investment.--For purposes of paragraph (2)(B)--
>
> > (A) Allocation to income.--Any amount to which this subsection applies shall be treated as allocable to income on the contract to the extent that such amount does not exceed the excess (if any) of--
> >
> > > (i)  the cash value of the contract (determined without regard to any surrender charge) immediately before the amount is received, over
> > >
> > > (ii)  the investment in the contract at such time.  [Emphasis added.]

Petitioners' reliance is misplaced.

The distribution at issue resulted from petitioner's surrender of the policy. As stated earlier, section 72(e)(5) applies to the surrender of a life insurance contract. See sec. 72(e)(5)(E). In contrast, section 72(e)(3) applies only to the computation of annuities under section 72(e)(2)(B). In fact, section 72(e)(5)(A) specifically provides that section 72(e)(2)(B) shall not apply. Consequently, the computation under section 72(e)(3)(A) is not applicable.

For the reasons stated herein, we hold that petitioners received a taxable distribution of $8,944 resulting from petitioner's surrender of the policy. Accordingly, we sustain respondent's determination.

Conclusion

We have considered all of the other arguments made by petitioners, and, to the extent that we have not specifically addressed them, we conclude they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered for respondent.