T.C. Memo. 2011-183

UNITED STATES TAX COURT

JAMES AND DEBORAH LEDGER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4901-09.                    Filed August 2, 2011.

        R determined a deficiency in income tax for Ps' 2006
tax year.  The issue for decision is whether Ps had taxable
income for their 2006 tax year upon the maturity of P-H's
life insurance contract.

        <u>Held</u>:  The maturity of P-H's insurance contract
resulted in taxable income to Ps for the 2006 tax year.

James Ledger, pro se.

<u>Sebastian Voth</u>, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  This case is before the Court on a petition for redetermination of an income tax deficiency that respondent determined for petitioners' 2006 tax year.  After concessions, the issue for decision is whether petitioners recognized taxable income of $40,992.28 as a result of the maturity of petitioner James Ledger's (Mr. Ledger's) life insurance policy.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulations, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in California.

Mr. Ledger purchased a life insurance policy (policy) from Prudential Insurance Co. of America (Prudential) in April 1974. The face amount of the policy was $31,448, the maturity value considered for gain was $61,722.31, the endowment maturity value was $42,403, and the monthly premiums were set at $100.  The policy was payable upon either Mr. Ledger's death or his reaching age 65.

---

[1]Petitioners conceded that they failed to report for their 2006 tax year:  (1) Wages of $503 received from Mobile Mini, Inc.; (2) dividends of $2 received from the Walt Disney Co.; (3) income of $1,287 received from Whirlpool Corp.; and (4) Social Security benefits of $15,310 received from the Social Security Administration.  Respondent conceded that for their 2006 tax year petitioners are entitled to a Lifetime Learning Credit of $2,000 and are not liable for an accuracy-related penalty.

In October 1978, Mr. Ledger borrowed $2,000 against the policy. Over approximately the next 27 years, Mr. Ledger took out an additional 13 loans against the policy, making a final loan request in March 2005.

As of May 27, 2005, Mr. Ledger's final loan balance and accrued interest against the policy totaled $56,219.61. The policy matured on April 12, 2006, with a gross maturity value of $61,787.72 and a maturity value considered for gain value of $61,772.31. Prudential paid Mr. Ledger $5,568.11 (gross maturity value less final loan balance). Prudential determined Mr. Ledger's investment in the contract at the time of maturity to be $20,780.03.

Prudential issued to Mr. Ledger a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for the 2006 tax year, identifying taxable distributions of $40,992.28 (calculated as maturity value considered for gain less cost basis).[2]

Respondent issued to petitioners a notice of deficiency on December 15, 2008, determining a $7,184 deficiency in income tax

---

[2]Although Mr. Ledger stipulated that Prudential issued the Form 1099-R, he contends that he did not receive it. The record is inconclusive on this point, which in any event is immaterial to our analysis. In par. 14 of the stipulation of facts the parties rounded the amount to $40,992.

and a section 6662(a) accuracy-related penalty of $1,433 for the 2006 tax year.[3]  Petitioners filed a timely petition with this Court on March 2, 2009.

Prudential issued to Mr. Ledger a letter dated March 9, 2010 (correspondence), explaining how it calculated Mr. Ledger's cost basis and taxable distributions in the policy.  The correspondence indicates that a Form 1099-R was issued to Mr. Ledger with respect to the policy identifying a distribution of $4,434.89 for the 1990 taxable year but does not indicate that any additional Forms 1099 were issued to Mr. Ledger during the term of the policy.  The correspondence further indicates that the policy's premiums were paid using the annual dividends from 1996 to 2005.

A trial was held on September 13, 2010, in Los Angeles, California.

                              OPINION

The Commissioner's determination of a taxpayer's liability for an income tax deficiency is generally presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, pursuant to section 7491(a)(1), the burden

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect for the tax year at issue.  The Rule reference is to the Tax Court Rules of Practice and Procedure.

of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." The burden will shift only if the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Code and "cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2). Petitioners did not argue that the burden should shift, and they failed to introduce credible evidence that respondent's determinations are incorrect. Accordingly, the burden of proof remains on petitioners.

Section 61(a) defines gross income as "all income from whatever source derived," unless otherwise provided. Section 72(e)(1)(A), (5)(A), (C) provides that an amount received under a life insurance contract that is not received as an annuity is included in gross income to the extent it exceeds the investment in the contract.

The term "investment in the contract" is defined under section 72(e)(6) as "(A) the aggregate amount of premiums or other consideration paid for the contract before such date, minus (B) the aggregate amount received under the contract before such date, to the extent that such amount was excludable from gross income".

For Federal income tax purposes, loans against a life insurance contract's cash value are treated as true loans from the insurance company to the policyholder with the policy serving as collateral.  See Minnis v. Commissioner, 71 T.C. 1049, 1054 (1979); Sanders v. Commissioner, T.C. Memo. 2010-279; Atwood v. Commissioner, T.C. Memo. 1999-61.  Thus, using the policy's proceeds to satisfy the loans has the same effect as paying the proceeds directly to the policyholder.  See, e.g., Atwood v. Commissioner, supra.

Mr. Ledger testified at trial that he had already "paid taxes" on any money he took out of the policy, specifically any dividends that were issued to him.  Mr. Ledger also testified at trial that he does not "know the difference between a dividend or calling the insurance company and say [sic], I need another $3,000 for the kids school and they sent it to me."

Other than Mr. Ledger's oral testimony and the 1990 Form 1099-R identifying a distribution of $4,434.89, petitioners introduced no evidence at trial to demonstrate that they had previously paid taxes on any funds borrowed or received from the policy.

Petitioners' fundamental contention, as we understand it, is that they should not be taxed on any distribution from Prudential in 2006 because they had already paid taxes on all funds issued

to them under the policy. On the factual record, petitioners are mistaken.

When it terminated Mr. Ledger's policy in 2006, Prudential applied the policy's maturity value to the outstanding balance on the policy loans. That action was the economic equivalent of Prudential's paying petitioners the policy proceeds, including untaxed inside buildup, and petitioners' using most of those proceeds to pay off the policy loans. This constructive distribution is pro tanto a payment of the policy proceeds and as such is gross income to petitioners insofar as it exceeds their investment in the contract. See McGowen v. Commissioner, T.C. Memo. 2009-285; Atwood v. Commissioner, supra.

The evidence indicates that upon termination in 2006, the policy's cash value for tax purposes was $61,772.31 and Mr. Ledger's investment in the policy was $20,780.03. Petitioners have produced no evidence to indicate that Prudential's calculation are incorrect. Nor have they substantiated their claim that they previously paid any taxes on distributions received under the policy not properly considered in Prudential's calculations. Consequently, as respondent determined, petitioners received $40,992.28 as a constructive distribution, taxable as income to them for their 2006 tax year.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.