**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-11

UNITED STATES TAX COURT

STEVEN L. JARVIS AND ESTATE OF CYNTHIA S. JARVIS, DECEASED,
STEVEN L. JARVIS, SPECIAL ADMINISTRATOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24503-11S.                    Filed February 19, 2013.

Steven L. Jarvis, pro se and for the Estate of Cynthia S. Jarvis.

<u>Najah J. Shariff</u>, for respondent.

SUMMARY OPINION

KERRIGAN, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.

The decision to be entered is not reviewable by any other court, and this opinion

shall not be treated as a precedent for any other case.  Unless otherwise indicated,

all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

Respondent determined a $6,425 income tax deficiency and a $1,285 accuracy-related penalty under section 6662(a) for petitioners'[1] 2009 tax year. The issues for our consideration are (1) whether petitioner husband received taxable income of $37,981 upon the termination of a life insurance policy and (2) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

<u>Background</u>

The parties have stipulated some of the facts, which are so found. When they petitioned the Court, petitioners were married and resided in California.

In 1976 petitioner husband purchased a whole life insurance policy with a face value of $40,000 with Connecticut General Life Insurance Co. The annual premium payment amount was $556 for the first 13 years of the policy. Petitioner husband selected the automatic premium loan provision on his application. The automatic premium loan provision provided that if petitioner husband failed to pay a

_____

[1]Petitioner wife passed away after the petition was filed. For simplicity we refer to petitioner husband and the estate of petitioner wife collectively as "petitioners".

premium, the insurance company would extend his coverage by paying the premium automatically via a policy loan against the cash value of the policy.

In 1986 petitioner husband modified his whole life insurance policy with Connecticut General Life Insurance Co., replacing his old policy with a new one that had $125,000 of coverage. The annual premium for this policy was $2,256. Petitioner husband again elected the automatic premium loan provision.

In 1986 petitioner husband made a deposit of $7,582 in a premium deposit account. The deposit covered premiums through 1990. Petitioner husband made no other deposits. From 1991 to 2009 Connecticut General Life Insurance Co. used the automatic premium loan provision to make premium payments automatically with loans against the cash value of the policy.

From 1991 to 2009 Connecticut General Life Insurance Co. and later, Lincoln National Insurance Co., which acquired petitioner husband's insurance policy, sent annual statements to petitioner husband notifying him of the growth of the premium loans and the interest due. The insurance companies sent these annual statements to the address petitioner husband listed on his applications, which is the same as the address that petitioners listed on their petition.

Under the policy, the policy would lapse if its cash value could no longer cover the premium payments. This would occur if the outstanding loan balance and interest exceeded the policy's cash value. On February 6, 2009, Lincoln National Insurance Co. notified petitioner husband that his policy had lapsed because the outstanding loan balance and interest exceeded the policy's cash value. On March 6, 2009, Lincoln National Insurance Co. notified petitioner husband that his policy had terminated effective March 6, 2009. At the time of the lapse petitioner husband had an outstanding loan balance of $87,347. Lincoln National Insurance Co. issued petitioner husband a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for tax year 2009. The Form 1099-R showed a gross distribution of $86,762 and a taxable amount of $37,981.

Petitioners timely filed their Form 1040, U.S. Individual Income Tax Return, for tax year 2009. Petitioners did not include the taxable amount of $37,981 shown on the Form 1099-R. On August 8, 2011, respondent sent petitioners the notice of deficiency, showing an adjustment to income of $37,981 for pensions and annuities.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and a taxpayer bears the burden of proving those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). In order to shift the burden the taxpayer must comply with all substantiation and recordkeeping requirements and cooperate with all reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews, pursuant to section 7491(a)(2). See Higbee v. Commissioner, 116 T.C. 438, 441 (2001). Petitioners did not argue that the burden should shift, and they failed to introduce credible evidence that respondent's determinations are incorrect. Accordingly, the burden of proof remains on petitioners.

Section 61(a) defines gross income as "all income from whatever source derived", unless otherwise provided. Generally, any amount that is received under a life insurance contract or endowment contract before the annuity starting date and that is not received as an annuity is included in gross income to the extent it exceeds the investment in the contract. Sec. 72(e)(1)(A), (5)(A), (C). The phrase "investment in the contract" is defined generally as the aggregate amount of premiums or other consideration paid for the contract less the aggregate amount

previously received under the contract, to the extent it was excludible from gross income.  Sec. 72(e)(6).

The derivation and computation of the amount reported as taxable income on the Form 1099-R that Lincoln National Insurance Co. issued upon termination of petitioner husband's policy are not in dispute.  The only issue is whether this amount is includible in petitioners' gross income as an amount received within the meaning of section 72(e).

For Federal income tax purposes, loans against the cash value of a life insurance contract are treated as true loans from the insurance company to the policyholder with the policy serving as collateral; these loans are not taxable distributions when received.  See Minnis v. Commissioner, 71 T.C. 1049, 1054 (1979); Ledger v. Commissioner, T.C. Memo. 2011-183; Atwood v. Commissioner, T.C. Memo. 1999-61.  When Lincoln National Insurance Co. terminated petitioner husband's policy, the amounts of his policy loans and capitalized interest were charged against the proceeds from termination made available at that time.  This constructive distribution in satisfaction of the loans had the effect of a pro tanto payment of the policy proceeds to petitioners and so constituted income to them at that time to the extent it exceeded their investment in the policy.  Ledger v. Commissioner, T.C. Memo. 2011-183; Atwood v.

<u>Commissioner</u>, T.C. Memo. 1999-61. A contrary result would permit policy proceeds, including previously untaxed investment returns, to escape tax altogether.

Accordingly, we hold that respondent correctly determined that petitioners received taxable income of $37,981 as a constructive distribution upon the termination of petitioner husband's life insurance policy with Lincoln National Insurance Co.

Respondent also determined that petitioners are liable for an accuracy-related penalty under section 6662(a) on the underpayment of tax for tax year 2009. Section 6662(a) imposes a 20% penalty on the portion of an underpayment of tax attributable to, among other things, a substantial understatement of income tax. Sec. 6662(b)(2). A substantial understatement of income tax is defined as an understatement that exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). Respondent determined that petitioners should have reported $11,181 on their 2009 Federal income tax return and that they understated their tax by $6,425, an amount that is more than 10% of the tax required to be shown on the return for the taxable year and also more than $5,000. Thus, respondent correctly determined that petitioners substantially understated their income tax. Petitioners are therefore liable for the

accuracy-related penalty unless they can show that any part of the understatement is attributable to an item that was adequately disclosed and has a reasonable basis, or for which there was substantial authority for its tax treatment. Sec. 6662(d)(2)(B).

Petitioners, although issued a Form 1099-R by Lincoln National Insurance Co. indicating the taxable amount upon termination of petitioner husband's insurance policy, neither disclosed on their 2009 income tax return the taxable amount reported on the Form 1099-R issued by Lincoln National Insurance Co. nor explained why the amounts shown thereon were not reported on their 2009 income tax return. See sec. 6662(d)(2)(B)(ii)(I); sec. 1.6662-4(e) and (f), Income Tax Regs. Petitioners contend that they did not receive the information regarding the taxable income, but Lincoln National Insurance Co. mailed the Form 1099-R to petitioners' correct address, and they have not provided any evidentiary basis for a factual finding that they did not receive it. Petitioners also have not shown that any of the types of authority listed in section 1.6662-4(d)(3)(iii), Income Tax Regs., would support their failure to report the taxable amount of the payment of the policy proceeds as income.

If a taxpayer had reasonable cause for and acted in good faith regarding part of the underpayment, no penalty is imposed on that part. See sec. 6664(c)(1); sec.

1.6664-4(a), Income Tax Regs.  An important factor for demonstrating reasonable cause and good faith is the extent of the taxpayer's effort to determine the proper tax liability.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Petitioners did not explain what efforts they took to determine the proper tax liability at the time of filing their 2009 tax return.

Accordingly, we hold that petitioners are liable for the accuracy-related penalty under section 6662(a), as determined by respondent.  Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.