T.C. Memo. 2016-110

UNITED STATES TAX COURT

KENNETH L. MALLORY AND LARITA K. MALLORY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14873-14.                          Filed June 6, 2016.

Joseph A. Flores, for petitioners.

G. Chad Barton, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  The respondent (referred to here as the "IRS") issued

a notice of deficiency to the petitioners, Kenneth L. Mallory and Larita K.

Mallory, for the 2011 taxable year.  In this notice, the IRS determined an income-

tax deficiency of $40,486, an addition to tax for failure to timely file under section

**[\*2]** 6651(a)(1) of $10,122, and an accuracy-related penalty under section 6662(a) of $8,097.[1]

The Mallorys timely filed a petition under section 6213(a) for redetermination of the deficiency, the addition to tax, and the penalty.[2]  We have jurisdiction under section 6214(a).

At issue are:

(1)     Whether Kenneth Mallory received a life insurance distribution of $237,897.25, of which $150,397.25 was includable in the Mallorys' gross income for the 2011 taxable year.  We hold that he did.

(2)     Whether the Mallorys are liable for an addition to tax under section 6651(a)(1) for failure to timely file a return for the 2011 taxable year.  We hold that they are.

(3)     Whether the Mallorys are liable for an accuracy-related penalty under section 6662(a) and (b)(2) for an underpayment due to a substantial

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Mallorys resided in Oklahoma when they filed their petition. Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Tenth Circuit unless the parties designate the Court of Appeals for another circuit.  See sec. 7482(b)(1) and (2).

[*3] understatement of income tax for the 2011 taxable year.  We hold that they are.

FINDINGS OF FACT

On October 1, 1987, Kenneth Mallory purchased a modified single premium variable life insurance policy with Monarch Life Insurance Company.  He made a single premium payment of $87,500.  The policy named Kenneth Mallory as the insured and as the policy's owner, and it named Larita Mallory as the direct beneficiary.

The policy provided that Kenneth Mallory, as the owner, could borrow from Monarch Life and that the loans were secured by the policy.  The policy provided that interest accrued on the loans, that the interest was payable by Kenneth Mallory annually, and that any unpaid interest would be added to the outstanding loan amount (i.e., that the unpaid interest would be "capitalized").  The outstanding loan amount (including capitalized interest) was defined as "policy debt".  The policy provided that, if the policy debt ever exceeded the cash value of the policy (defined as the premiums and earnings on premiums), Monarch Life would terminate the policy after giving Kenneth Mallory notice of the pending termination and an opportunity to pay down the policy debt to avoid termination.

**[*4]** Kenneth Mallory signed a form authorizing Monarch Life to accept telephone requests for policy loans. From June 1991 through December 2001, Kenneth Mallory took out numerous loans against the policy in amounts ranging from $1,000 to $12,000. These loans are listed below:

| Loan date | Amount |
|---|---|
| June 11, 1991 | $3,000 |
| Dec. 23, 1991 | 5,000 |
| June 5, 1992 | 1,000 |
| June 15, 1992 | 2,300 |
| Dec. 21, 1992 | 5,000 |
| Nov. 1, 1994 | 5,000 |
| Dec. 8, 1994 | 3,000 |
| Feb. 6, 1995 | 4,000 |
| Dec. 27, 1996 | 3,500 |
| Sept. 10, 1998 | 10,000 |
| Sept. 30, 1999 | 8,000 |
| Mar. 13, 2000 | 6,000 |
| May 17, 2000 | 11,000 |
| June 27, 2000 | 5,000 |
| Aug. 7, 2000 | 5,000 |
| Oct. 30, 2000 | 10,000 |
| Dec. 22, 2000 | 5,000 |
| Feb. 8, 2001 | 10,000 |
| May 8, 2001 | 3,000 |
| June 6, 2001 | 8,000 |
| July 16, 2001 | 2,500 |
| Aug. 6, 2001 | 12,000 |
| Sept. 27, 2001 | 2,000 |
| Oct. 30, 2001 | 2,500 |
| Dec. 12, 2001 | 2,000 |
| Total (without interest) | 133,800 |

[*5] Monarch Life regularly issued Kenneth Mallory several types of statements relating to the policy and the loans, including: (1) loan activity confirmations for each loan when the loan was made, (2) yearly notices requesting payment of interest and notifying Kenneth Mallory that any unpaid interest would be capitalized, and (3) quarterly reports of the policy debt and the cash value of the policy. The Mallorys received these statements.

As indicated in the statements, the cash value of the policy increased substantially. This increase was due to earnings on the investment of the initial premium. However, the policy debt also grew as Kenneth Mallory took out loans from Monarch Life against the policy without repaying the loans or paying the interest on those loans.

On October 17, 2011, Monarch Life sent Kenneth Mallory a letter informing him that the policy debt had exceeded the cash value. The letter also informed him that to avoid termination of the policy he had to make a minimum payment of $26,061.67 by December 17, 2011. The letter further explained that termination of the policy would result in a taxable event and that Monarch Life would report any taxable gain to Kenneth Mallory and the IRS on a Form 1099-R, "Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.". The letter noted that, as of October 17, 2011, the

**[*6]** taxable gain was $155,119.16. The Mallorys received this letter, but Kenneth Mallory did not make the required payment, and Monarch Life terminated the policy on December 17, 2011.

Monarch Life issued Kenneth Mallory a Form 1099-R for 2011 showing a gross distribution of $237,897.25, insurance premiums of $87,500, and a taxable amount of $150,397.25. The Mallorys received the Form 1099-R before the April 15, 2012 filing deadline.

Before filing their 2011 income-tax return, Larita Mallory spoke with Steve Miller of Liberty Tax Services about the income that Monarch Life had reported on the Form 1099-R. Miller told Larita Mallory that she "was going to owe a bunch of money". Miller prepared the Mallorys' 2011 Form 1040, "U.S. Individual Income Tax Return". The Mallorys did not file their 2011 Form 1040 until around March 8, 2013. The Mallorys did not report income from the Form 1099-R on their 2011 Form 1040. They did, however, attach to their income-tax return the Form 1099-R and a handwritten note that said:

> Paid hundreds of $. No one knows how to compute this using the 1099R from Monarch--IRS could not help when called--Pls send me a corrected 1040 explanation + how much is owed. Thank you

Larita Mallory's testimony clarifies the meaning of the note attached to the return. She testified that before the Mallorys filed their return, she telephoned several

[*7] persons other than Miller to ascertain whether the Form 1099-R was correct. The persons she telephoned consisted of two groups: (1) people who advertised themselves in the telephone directory as tax professionals (and whom she did not pay, unlike Miller) and (2) various IRS personnel. None of the persons she contacted was willing to confirm whether the Form 1099-R was correct.

OPINION

1. The IRS correctly determined that Kenneth Mallory received a life insurance distribution of $237,897.25, of which $150,397.25 was includable in the Mallorys' gross income for the 2011 taxable year.

The IRS argues that the termination of the policy in 2011 resulted in the extinguishment of Kenneth Mallory's $237,897.25 policy debt, that this extinguishment was a $237,897.25 constructive distribution to him, and that $150,397.25 (the amount by which the constructive distribution exceeded his investment in the life insurance contract) is includable in the Mallorys' gross income for the 2011 taxable year.

The Mallorys deny that they had any policy debt. They contend that the amounts Kenneth Mallory received from 1991 to 2001 were distributions of the cash value of the policy that he did not have to pay back. Because there was no policy debt to extinguish (in their view) and because Kenneth Mallory did not physically receive any payments from Monarch Life in 2011, the Mallorys contend

[*8] they had no income from Monarch for 2011.  In the alternative the Mallorys argue that, if the termination of the policy did give rise to income, they may claim interest deductions.

The burden of proof rests on the Mallorys.  See Rule 142(a) (burden of proof generally rests on the taxpayer).  They have not contended that the conditions set forth in section 7491(a) (shifting the burden of proof to the IRS) have been satisfied.  Nor does the record show that the conditions have been satisfied.

The evidence shows that the $133,800 transferred from Monarch Life to Kenneth Mallory from 1991 to 2001 was policy loans, that, when combined with accrued interest, eventually resulted in a policy debt of $237,897.25.  The policy's underlying terms allowed Kenneth Mallory to borrow against the cash value of the policy and provided that these policy loans would result in the accrual of interest.  The policy loans were bona fide debt.  See Minnis v. Commissioner, 71 T.C. 1049, 1054 (1979).  Kenneth Mallory signed a form authorizing Monarch Life to accept telephone requests for policy loans.  Whenever Monarch Life made a transfer to Kenneth Mallory, it sent him a loan activity confirmation.  It sent him yearly notices requesting payment of interest and notifying him that any unpaid interest would be capitalized.  It sent him quarterly reports of the policy debt and the cash

[*9] value of the policy. The Mallorys admit that they received these confirmations and notices, all of which unambiguously refer to the amounts transferred by Monarch Life to Kenneth Mallory from 1991 to 2001 as loans and not distributions.

As the proceeds of loans, the amounts that Kenneth Mallory received from 1991 to 2001 were not includable in the Mallorys' income for those years. See Commissioner v. Tufts, 461 U.S. 300, 307 (1983). In 2011, when Kenneth Mallory's policy terminated, his policy debt--including capitalized interest--was extinguished. This extinguishment of his policy debt had the effect of a constructive distribution of the cash value in the policy to Kenneth Mallory. See Atwood v. Commissioner, T.C. Memo. 1999-61, slip op. at 5.

We now turn to the tax treatment of the $237,897.25 constructive distribution. Any amounts received under a life insurance contract that were paid because of the death of the insured are excludable from the gross income of the recipient; that is, they are not taxable. Sec. 101(a)(1). The tax treatment of amounts received under a life insurance contract before the death of the insured is found in section 72. Section 72(e)(5) governs nonannuity amounts received. Sec. 72(e)(5)(C). The $237,897.25 was received before Kenneth Mallory's death, and therefore section 72 governs its tax treatment. Because the amount was not

[*10] received as an annuity, section 72(e)(5) governs its tax treatment. Section 72(e)(5)(A) provides that (with certain exceptions not applicable here) an amount received under a life insurance contract is "included in gross income, but only to the extent it exceeds the investment in the contract." Therefore, the $237,897.25 is includable in gross income to the extent it exceeds the investment in the contract.

Investment in the contract is (i) the total premiums or other consideration paid minus (ii) the total amount received under the contract that was excludable from gross income. Sec. 72(e)(6). At the time that the policy was terminated, Kenneth Mallory's investment in the contract was $87,500 (i.e., his single premium payment). That portion of the constructive distribution was nontaxable. See sec. 72(e)(5)(A). But the balance of the constructive distribution, or $150,397.25, constitutes gross income (i.e., $237,897.25 – $87,500 = $150,397.25). Therefore, we hold that the Mallorys must include the $150,397.25 in their gross income.[3] See Brown v. Commissioner, 693 F.3d 765 (7th Cir. 2012), aff'g T.C. Memo. 2011-83.

_____

[3]Under sec. 1.6013-4(b), Income Tax Regs., if a joint return is made, the gross income of the spouses on the joint return is computed in the aggregate. The Mallorys eventually filed a joint income return for 2011. For 2011 their aggregate gross income must include the taxable portion of the constructive distribution from Monarch Life to Kenneth Mallory.

[*11] The Mallorys argue in the alternative that, if the termination of the life insurance policy gave rise to income, then "[d]eductions of paid interest and other losses would be available" and lower their taxable income. This argument is untimely raised and without merit.

When Kenneth Mallory's life insurance policy was terminated in 2011, the cash value of the policy was used to extinguish his policy debt. This policy debt included accrued interest. The Mallorys contend that there should be a deduction for their payment of interest. The Mallorys did not raise the issue of an interest deduction in their petition. Any issues not raised in the petition are deemed conceded. Rule 34(b)(4). Therefore, the issue of deductibility of interest is deemed conceded and we need not address this issue.

Moreover, even if the Mallorys had properly raised the issue of deductibility of interest, they would still not be entitled to a deduction. Section 163(a) generally allows a deduction of all interest paid or accrued during the taxable year. As an exception to this general rule, however, in the case of a taxpayer other than a corporation, section 163(h) generally disallows any deduction for "personal interest", defined to include any interest expense that does not fall within one of the five categories listed in section 163(h)(2). These categories are: (1) trade or business interest; (2) investment interest; (3) interest used to compute passive

**[*12]** income or loss; (4) qualified residence interest; and (5) interest payable on certain deferred estate tax payments. Sec. 163(h)(2)(A)-(E). The Mallorys presented no evidence to show that the interest expenses would fall within any of these five enumerated categories. To the contrary, Kenneth Mallory testified that the loans were taken out to cover short-term financial needs, and the record does not indicate that these needs were anything other than living expenses. The Mallorys have not shown that the interest they paid to Monarch Life was not personal interest. Any interest paid on their life insurance loans is not deductible. See sec. 163(h); Atwood v. Commissioner, slip op. at 8-9.

2.    The Mallorys are liable for an addition to tax under section 6651(a)(1) for failure to timely file a return for the 2011 taxable year.

The IRS determined that the Mallorys are liable for the section 6651(a)(1) addition to tax for the 2011 taxable year. Section 6651(a)(1) imposes an addition to tax for failure to file a tax return by its filing deadline (determined by taking into account any extensions of that deadline) unless the taxpayer can establish that the failure to file is due to reasonable cause and not due to willful neglect. The section 6651(a)(1) addition to tax is 5% of the amount required to be shown as tax on the return for each month the failure to file continues, not to exceed 25% in the aggregate. Sec. 6651(a)(1) and (b)(1).

**[\*13]** The IRS bears the burden of production for additions to tax determined under section 6651(a)(1). See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). The IRS satisfies its burden of production for the section 6651(a)(1) addition to tax by producing sufficient evidence to establish that the taxpayer failed to timely file a required federal-income-tax return. See Wheeler v. Commissioner, 127 T.C. 200, 207-208 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Higbee v. Commissioner, 116 T.C. at 447.

The Mallorys' return for 2011 was due on April 15, 2012. See sec. 6072(a). They did not request an extension of time to file the return. The IRS received the Mallorys' tax return on March 8, 2013, nearly a year after the filing deadline. These facts are sufficient to satisfy the IRS's burden of producing evidence that imposing the addition to tax under section 6651(a)(1) is appropriate for the 2011 taxable year. See, e.g., Wheeler v. Commissioner, 127 T.C. at 207-208.

Once the IRS satisfies its burden of production, the burden of proof is on the taxpayer to show that the failure to file was due to reasonable cause and not to willful neglect. See Higbee v. Commissioner, 116 T.C. at 447. The Mallorys are liable for the section 6651(a)(1) addition to tax for the 2011 taxable year unless there is sufficient evidence to persuade the Court that they had reasonable cause for their failure and that their failure to file their 2011 returns was not due to

**[*14]** willful negligence. <u>See</u> sec. 6651(a)(1); <u>Higbee v. Commissioner</u>, 116 T.C. at 447. Reasonable cause excusing a failure to timely file exists if the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return by the deadline. <u>See</u> sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure or reckless indifference. <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985).

The Mallorys did not address the addition to tax for their failure to timely file a return for the 2011 taxable year at trial or in their opening brief. Issues that are not addressed in the opening brief are deemed conceded. <u>See</u> Rule 151(e)(4) and (5); <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 683 (1989); <u>Money v. Commissioner</u>, 89 T.C. 46, 48 (1987). It is only in their answering brief (a brief to which the IRS has had no opportunity to respond) that the Mallorys finally explain their view as to why the addition to tax for failure to timely file should not be imposed. They contend that the addition to tax should not be imposed because an accountant (Miller) prepared the return they filed. The Mallorys do not explain why the fact that an accountant prepared the return is reasonable cause for their late filing of the return. Thus, their argument would be unpersuasive even if timely made.

[*15] Accordingly, we hold that the Mallorys are liable for the addition to tax under section 6651(a)(1).

3.      The Mallorys are liable for an accuracy-related penalty under section 6662(a) and (b)(2) for an underpayment due to a substantial understatement of income tax for the 2011 taxable year.

Section 6662(a) imposes a 20% "accuracy-related penalty" on an underpayment of tax attributable to any of the causes listed in section 6662(b). These causes include "[a]ny substantial understatement of income tax." Sec. 6662(b)(2). An understatement is defined as the excess of the correct amount of tax over the amount of the tax which is shown on the return. Sec. 6662(d)(2)(A). For an understatement to be substantial it must exceed 10% of the tax required to be shown on the return. Sec. 6662(d)(1). It also must exceed $5,000. Id. Section 6662(d)(2)(B)(ii) provides that the amount of the understatement is to be reduced by that portion of the understatement which is attributable to any item if the relevant facts affecting the item's tax treatment are adequately disclosed on the return or in a statement attached to the return and there is a reasonable basis for the tax treatment of such item by the taxpayer. Section 1.6662-3(b)(3), Income Tax Regs., provides that the reasonable basis standard is a relatively high standard that is significantly higher than not frivolous. Id. sec. 1.6662-4(e)(2)(i). A return position that is merely arguable does not satisfy the reasonable basis standard. Id.

**[\*16]** sec. 1.6662-3(b)(3).  A position generally has a reasonable basis if the position is reasonably based on one or more authorities listed in section 1.6662-4(d)(3)(iii), Income Tax Regs., which includes the Internal Revenue Code, temporary and final regulations, revenue procedures and revenue rulings, and court decisions.  Sec. 1.6662-4(e)(2)(i), Income Tax Regs.; id. sec. 1.6662-3(b)(3).

The penalty under section 6662(a) does not apply if the taxpayer can demonstrate that he or she:  (1) had reasonable cause for the underpayment and (2) acted in good faith with respect to the underpayment.  Sec. 6664(c)(1).  The regulations provide that reasonable cause and good faith are determined on a case-by-case basis, taking into account all pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability.  Id.

With respect to any penalty imposed on an individual under title 26, section 7491(c) imposes the burden of production on the IRS.  This requires the IRS to come forward with evidence indicating that it is appropriate to impose the relevant penalty.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446.  Once the IRS has met this burden, the taxpayer bears the burden of proving that the penalty is inappropriate because the taxpayer had reasonable cause for the underpayment and acted in good faith with respect to the underpayment or because the amount of the

[*17] understatement should be reduced because of adequate disclosure. Higbee v. Commissioner, 116 T.C. at 447.

In the notice of deficiency the IRS determined that the Mallorys were liable for an accuracy-related penalty under section 6662(a) of $8,097 for 2011. The IRS contends that the Mallorys' underpayment of tax is attributable to a substantial understatement of income tax. The Mallorys' understatement of income tax is $40,486. This $40,486 understatement exceeds 10% of the tax required to be shown on their return. See sec. 6662(d)(1). The tax required to be shown on the Mallorys' return was $50,405 which, multiplied by 10%, is $5,041, which exceeds $5,000. Therefore, the Mallorys' understatement of income tax was substantial.

The Mallorys attached a copy of the Form 1099-R to their return and referred to the Form 1099-R in a handwritten note they attached to their return. The note said:

> Paid hundreds of $. No one knows how to compute this using the 1099R from Monarch--IRS could not help when called--Pls send me a corrected 1040 explanation + how much is owed. Thank you

The Mallorys did not argue that the exception for disclosure and reasonable basis given by section 6662(d)(2)(B)(ii) applies to this case. But if they had, we would still find the exception inapplicable because the Mallorys' failure to report income from Monarch Life is not supported by reasonable basis. See sec. 1.6662-3(b)(3),

[*18] Income Tax Regs.  The Mallorys neither based their position on any of the authorities listed in section 1.6662-4(d)(3)(iii), Income Tax Regs., nor had any other reasonable basis for their understatement of income tax.  We offer no view as to whether the handwritten note was an adequate disclosure of the relevant facts.

The Mallorys assert a defense to the section 6662(a) penalty based on reasonable cause and good faith.  However, we are not convinced that the Mallorys did enough to determine their proper tax liability.  The Mallorys received the letter from Monarch Life informing them that the policy debt on Kenneth Mallory's variable life insurance policy had exceeded its cash value, that the termination of the policy would result in a taxable event, and that any taxable gain in the policy would be reported to Kenneth Mallory and the IRS on a Form 1099-R.  The Mallorys received the Form 1099-R from Monarch Life before the April 15, 2012 filing deadline.  The only tax adviser that they paid, Miller, suggested there would be a tax liability.  Although various IRS employees and unpaid tax professionals declined to confirm whether the Monarch Life Form 1099-R was correct, it was unreasonable for the Mallorys to conclude from this unwillingness that they had no income from Monarch Life.  We hold that the Mallorys did not

**[*19]** have reasonable cause for, and did not act in good faith with respect to, the position on their tax return for the year 2011.

We hold that the Mallorys are liable for the section 6662(a) penalty.

In reaching our holdings, we considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.