# United States Tax Court

T.C. Summary Opinion 2025-10

DAVID BYRON FUGLER AND CINDY DIANE FUGLER,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 27150-21S.                    Filed November 17, 2025.

_____

David B. Fugler and Cindy D. Fugler, pro sese.

*Peter N. Tran*, *Jeffrey Phillips*, and *Yvette Nunez*, for respondent.


## SUMMARY OPINION

CARLUZZO, *Special Trial Judge*:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the Petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

In a Notice of Deficiency (Notice) dated May 24, 2021, respondent determined a deficiency in petitioners' 2018 federal income tax and a section 6662(a) accuracy-related penalty for that year.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

*Background*

Some of the facts have been stipulated and are so found. When the Petition was filed, petitioners lived in Texas. David Fugler (petitioner) is an attorney with more than 25 years of experience.

Petitioners are married to each other and have several children. They timely filed a joint 2018 federal income tax return. As relevant here, there is no income from Massachusetts Mutual Life Insurance Co. (Mass Mutual) reported on that return.

On December 14, 1987, petitioner applied for and purchased a whole life insurance policy from Mass Mutual insuring one of petitioners' children. On that date, Mass Mutual issued Policy No. 1[2] with a face amount of $16,394 with respect to that child. Petitioner was the owner and beneficiary of Policy No. 1. He paid $2,500 for Policy No. 1, of which $150 was the cost of the initial premium and $2,350 was the cost of the Additional Life Insurance Rider. Annual premiums of $150 were payable to Mass Mutual for Policy No. 1 until the child's 65th birthday or to the date of the child's death, whichever occurred first.

Also in December 1987, petitioner applied for and purchased a whole life insurance policy from Mass Mutual insuring another one of his children. On December 28, 1987, Mass Mutual Issued Policy No. 2 with a face amount of $18,692 with respect to that child. Petitioner was the owner and beneficiary of Policy No. 2. He paid $2,500 for Policy No. 2, of which $150 was the cost of the initial premium and $2,350 was the cost of the Additional Life Insurance Rider. Annual premiums of $150 were payable to Mass Mutual for Policy No. 2 until that child attained age 65 or to the date of the child's death, whichever occurred first.

From 1988 through 2006, petitioner paid $150 in annual premiums for each policy.

Policy Nos. 1 and 2 allowed for borrowing against each policy for a maximum amount equal to the policy's cash surrender value. Interest was chargeable on the loans and payable on the policies' annual anniversary date; loans were subject to a flexible interest rate charge

---

[2] We use Policy No. 1 and Policy No. 2 to refer to the policies in this Opinion. Those are not the actual numbers of the policies.

not to exceed 8% per year. Any unpaid interest was added to the loan balance and subject to interest at the rate payable on the loan.

On August 29, 2006, petitioner borrowed $10,500 from Policy No. 1 and $11,000 from Policy No. 2.

From 2007 through 2016,[3] petitioner did not pay annual premiums on either of the policies out of his own pocket. Instead he borrowed from Policy Nos. 1 and 2 to cover the annual premiums for the policies. Interest on the borrowed premiums was added to the loan balance on each policy.

On February 14, 2018, the policies had the following loan balances:

|  | *Policy No. 1* | *Policy No. 2* |
| --- | --- | --- |
| Initial Loan (2006) | $10,500 | $11,000 |
| Premiums Paid by Loan (2006–17) | 1,500 | 1,500 |
| Capitalized Interest (2006–16) | 7,125 | 7,448 |
| Uncapitalized Interest (2017) | 720 | 751 |
| Total Loan Balance (2018) | $19,845 | $20,699 |

Policy Nos. 1 and 2 could be surrendered for their cash surrender values at any time before the insureds' death. The cash surrender values of the policies increased over time as accumulated dividends built up within the policies but were reduced by the amounts of outstanding policy debt set out in the table above.

In January 2018 petitioner notified Mass Mutual of his intent to terminate both policies. On January 18, 2018, Mass Mutual acknowledged petitioner's decision and requested that he submit surrender forms to finalize the terminations. Mass Mutual further

---

[3] In 2016 the 2017 premium for the policies was paid via loan.

advised petitioner that surrendering the policies could result in taxable income.

On or about January 29, 2018, petitioner sent Mass Mutual the necessary surrender forms for both policies. Mass Mutual processed the forms and terminated the policies on February 14, 2018. It also issued two checks to petitioner, one for $3,033, representing the cash surrender value of Policy No. 1, and the other for $2,729, representing the cash surrender value of Policy No. 2.

Mass Mutual issued Form 1099–R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for each policy. The Forms 1099–R show the following:

|  | *Policy No. 1* | *Policy No. 2* |
| --- | --- | --- |
| Gross distribution | $22,878 | $23,428 |
| Taxable Amount | 16,028 | 16,578 |
| Insurance Premiums | 6,850 | 6,850 |

For Policy No. 1, the gross distribution of $22,878 represents the $3,033 cash paid to petitioner plus the $19,845 outstanding policy loan balance. For Policy No. 2, the gross distribution of $23,428 represents the $2,729 cash paid to petitioner plus the $20,699 outstanding policy loan balance.

The taxable amount for each policy is the gross distribution reduced by the $6,850 of policy premiums paid (or deemed paid for the policy via loan).

In the Notice respondent increased petitioners' income by the taxable amounts shown in the Forms 1099–R, which income was not included on petitioners' return. Other adjustments/determinations made in the Notice have been resolved between the parties or are computational and will not be discussed further. Respondent now concedes that petitioner Cindy Diane Fugler is entitled to relief under the provisions of section 6015(b) for any income tax liability resulting from determinations made in the Notice.

The issues for decision are whether (1) distributions from Policy Nos. 1 and 2 are includible in petitioners' 2018 income, (2) petitioners are entitled to a deduction for interest expenses paid on policy loans on

those life insurance policies, and (3) petitioner is entitled to equitable relief under section 6015(f).

## *Discussion*

The Commissioner's determinations in a Notice of Deficiency are generally presumed correct, and the taxpayer bears the burden of proof to establish error. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Petitioners do not argue that respondent bears any burden of proof with respect to the issues before us, and we find that he does not.

Section 61(a) defines gross income to include income "from whatever source derived," including "[i]ncome from life insurance and endowment contracts." I.R.C. § 61(a)(9). Section 72(a)(1) further provides that gross income includes any amount received under an annuity, endowment, or life insurance contract. Amounts received from a nonannuity life insurance contract are included in gross income to the extent that those amounts exceed the investment in the contract. *See* I.R.C. § 72(e)(1)(A), (3).

A loan against a life insurance policy's cash value (a policy loan) is a loan from the insurance company to the policyholder. *See Brown v. Commissioner*, T.C. Memo. 2011-83, 101 T.C.M. (CCH) 1374, 1376, *aff'd*, 693 F.3d 765 (7th Cir. 2012). Because policy loans are treated as loans, they are not taxable distributions to the distributee when the funds are received. *See Minnis v. Commissioner*, 71 T.C. 1049, 1057 (1979); *Mallory v. Commissioner*, T.C. Memo. 2016-110, at *8–9.

A taxpayer constructively receives proceeds from a terminated life insurance policy to the extent that existing policy loans are satisfied with the policy's available proceeds. *See Mallory*, T.C. Memo. 2016-110, at *9–10.

In 2006 petitioners took out loans against Policy Nos. 1 and 2, and received the loan amounts of $10,500 and $11,000, respectively. When petitioner terminated the policies on February 14, 2018, petitioners constructively received proceeds in the amount of the outstanding policy loan balances (which were completely satisfied) in addition to receiving a check for the remaining balance of each policy.

The proceeds that petitioners actually received (the checks) as well as the proceeds that petitioners constructively received (the amounts used to satisfy the outstanding policy loan balances) represent taxable income to petitioners in 2018 to the extent that the proceeds

exceeded the premiums paid. *See* I.R.C. § 61(a)(9), (11); *see also Mallory*, T.C. Memo. 2016-110, at \*9–10.

In addition to their unclear reasons why the above analysis, which is consistent with respondent's position, is erroneous, petitioners also argue that if the termination of the loans resulted in taxable income, the income is includible for 2017, not 2018. As petitioners view the matter, the "effective date" provision in the policies shows that the termination of the policies was deemed to be effective in 2017.[4] The policies were terminated on February 14, 2018, and the loan balances were paid off and checks were cut on that day. Because petitioners requested termination of the policies in January 2018 and received the proceeds in February 2018, the resultant income from the terminations is includible in their 2018 income (regardless of their method of accounting). *See* I.R.C. § 451(b)(1)(C).

Next we consider petitioners' claim for an interest expense deduction made after the Notice was issued. We begin by noting, as we have done in opinions too numerous to count, that deductions are matters of legislative grace, and the burden is on the taxpayer to clearly show the right to the claimed deduction. *See* Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).

According to petitioners, the proceeds of the policy loans were used in connection with petitioner's trade or business of mining and logging. According to respondent, the interest is properly treated as nondeductible personal interest.

Section 163(a) provides a general rule that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." However, section 163(h) disallows a deduction for personal interest paid or accrued during the taxable year. Section 163(h)(2) defines personal interest as any interest other than

---

[4] Although petitioners' method of accounting has not been expressly addressed, they have not shown that the terms of the contracts, which made the "effective date" of the surrender December 2017, would make the income received from the policies attributable to 2017 under any method of accounting. The "effective date" provision might be important for certain terms of the policies between petitioner and Mass Mutual, but petitioners have failed to show that the "effective date" provision affects the timing of the income at issue in this case.

(A) interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),

(B) any investment interest (within the meaning of subsection (d)),

(C) any interest which is taken into account under section 469 in computing income or loss from a passive activity of the taxpayer,

(D) any qualified residence interest (within the meaning of paragraph (3)),

(E) any interest payable under section 6601 on any unpaid portion of the tax imposed by section 2001 for the period during which an extension of time for payment of such tax is in effect under section 6163, and

(F) any interest allowable as a deduction under section 221 (relating to interest on educational loans).

While we agree with petitioners that interest "paid or accrued on indebtedness properly allocable to a trade or business" is not treated as personal interest, other than petitioner's vague testimony on the point, they have offered no evidence to show (1) that petitioner was engaged in a mining and logging trade or business during 2018, or if so, (2) that the loan proceeds were actually used in any such trade or business.

Petitioners have failed to show that interest paid on the policy loans is other than personal interest, and their claim for such a deduction is rejected.

Lastly we consider petitioners claim that petitioner is entitled to section 6015(f) equitable relief from any income liability resulting from the termination of the loan polices. As noted, respondent now concedes that Cindy Diane Fugler is entitled to section 6015(b) relief from any liability resulting from determinations made in the Notice, and petitioners do not challenge that concession. Nevertheless, petitioners argue that the Court has the authority to grant petitioner relief from the federal income tax consequences resulting from the termination of the life insurance loans. We disagree.

Aside from petitioners' failure to show that any of the factors that are taken into account in deciding whether a spouse is entitled to section 6015(f) relief apply to petitioner, it would seem to offend common sense to allow both spouses section 6015 relief with respect to the same income tax liability. As we have previously noted, section 6015 relief is

generally available to only one spouse for a single tax year, *see Abelein v. Commissioner*, T.C. Memo. 2004-274, 88 T.C.M. (CCH) 549, 559 ("The purpose of section 6015 is to protect one spouse from the overreaching or dishonesty of the other spouse."), and in this case it is not petitioner.

To reflect the foregoing,

*Decision will be entered under Rule 155.*